31 Ill. App.3d 864 (1975)
335 N.E.2d 126
HARRY PETRAITIS, Plaintiff-Appellee,
v.
THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF PALOS HILLS et al., Defendants-Appellants.
No. 61089.
Illinois Appellate Court  First District (3rd Division).
August 21, 1975.
Robert J. Di Leonardi, of Di Leonardi & O'Brien, Ltd., and Nolan, O'Malley & Dunne, both of Des Plaines, for appellants.
Walter C. Wellman, of Lyons, for appellee.
Judgment reversed.
*865 Mr. JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, Harry Petraitis, a police officer on the Palos Hills police department, was tried by the Board of Fire and Police Commissioners of the City of Palos Hills (hereinafter the Board) on six charges of official misconduct. At the conclusion of the hearing, the Board found plaintiff guilty of three acts of misconduct and discharged him from the force. He then filed this administrative review proceeding in the circuit court of Cook County seeking to reverse the Board's order. The court ruled that the Board's finding of cause for plaintiff's discharge was against the manifest weight of the evidence and ordered plaintiff returned to duty with back pay. Defendants appeal. In view of the court's decision, it is necessary to set forth the testimony taken at the Board hearing in some detail.
The first incident which the Board found to constitute cause for plaintiff's dismissal occurred on February 25, 1974. The charge was sleeping in a squad car while on duty, in violation of several police department rules.
Shortly before 10 p.m. on the evening in question, plaintiff parked his squad car on the shoulder of Roberts Road in Palos Hills and set up a radar device to monitor southbound traffic. The complaining witness, chief of police Norman Sobel, testified that at approximately 10:30 p.m. he pulled up directly behind the parked squad car, wishing to give instructions to plaintiff. The headlights of his vehicle illuminated the interior of the squad car and he observed the officer's bare head resting on the back of the driver's seat. The officer did not move or acknowledge the presence of the second vehicle and, finding this unusual, the chief remained in his car and observed the motionless figure. After about 3 minutes, he walked to the driver's door of the squad car and saw plaintiff sitting with his head rested on the back of the seat and his eyes closed. The chief waved his hand across the window and, getting no response, pulled the car door open. Sobel testified that plaintiff "woke up with a start" and said that he had been asleep for about 5 minutes. After inquiring if plaintiff was fit to continue his duties, the chief instructed him to resume a moving patrol and left the scene. On the following day the chief prepared a report of the incident and this report was received in evidence.
Plaintiff denied sleeping at any time while on duty on the night in question. Five or ten minutes after he parked the squad car and began monitoring traffic, the chief suddenly pulled his car door open. Plaintiff did not see the chief approach because his eyes were focused on the radar screen. He told the chief that he was monitoring traffic and admitted being tired. The radar was operating, the windows were clear, and the squad car's motor was running when the chief came up. Plaintiff *866 did not recall having a conversation with the chief concerning sleeping on duty.
The only other evidence related to the sleeping charge was the testimony of the police department's radio operator, Christine Tessman. Her testimony was confined to the fact that plaintiff made no radio contact with the station between 10 and 10:41 p.m.
The Board also found plaintiff guilty of arranging for a police candidate to obtain an illegal drug in order to assist said candidate in passing a polygraph examination given in connection with his application for a position in the Palos Hills police department. Again, the testimony of the witnesses was in sharp conflict.
Marvin Shlenski, a pharmacist and auxiliary member of the City's police department, testified that in February of 1974 plaintiff approached him in the police squad room and inquired whether certain drugs would help an individual pass a lie detector test. Shlenski indicated that the use of a stimulant, given by prescription only, caused a change in respiration and could help circumvent the test. Plaintiff then asked Shlenski if he would provide this drug to a friend of his who was applying for a position on the Palos Hills police department. When Shlenski agreed, plaintiff described his friend and said that his name was Nagle. The following day a man answering the description given by plaintiff came into Shlenski's store. He identified himself as Nagle, "the guy Petraitis sent" and said that he had come for the pill. Shlenski testified that he placed a placebo, a harmless sugar capsule, into a vial and instructed his clerk to give it to Nagle. Nagle accepted the vial and, without further conversation, left the store. The next day Shlenski reported the incident to Sergeant Bucik and later discussed the matter with Chief Sobel. According to Shlenski's testimony, plaintiff approached him about the drug when the two were alone in the squad room of the police station. The witness explained that he agreed to cooperate with the plaintiff because he wanted to see of the request was serious.
David Nagle testified that in February of 1974 he went to the police station to be photographed in connection with his application for a position on the department. He was talking to plaintiff about his scheduled polygraph examination when Shlenski stated that he knew a lot about the exam and invited Nagle to stop by his drug store on the following day. The witness testified that he thought Shlenski could explain the procedure used in administering the polygraph exam and, accordingly, went to the store to talk to Shlenski on the next day. When he arrived, Shlenski asked him how much he weighed, handed him a small bottle containing two green and white capsules, and told him to take the pills *867 2 hours before the examination. Nagle accepted the pills and left the store. The witness stated that he did not know what the pills contained and was speechless with surprise when Shlenski produced them. He stated that he had kept the pills, and an unmarked vial containing two green and white capsules was identified and admitted into evidence.
On cross-examination Nagle admitted that he had known plaintiff on a continuous basis for 5 or 6 years. The two men had served together on another police department for several years. They live in the same apartment building and see each other two or three times a week.
Plaintiff, testifying on his own behalf, denied saying anything to either man about drugs. He stated that Shlenski approached Nagle in his presence and offered to help Nagle pass the lie detector examination. Shlenski said that he had been helping Chicago policemen for 5 years and invited Nagle to come to his store and see him.
 1 Under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 et seq.) the findings and conclusions of an administrative agency on questions of fact are prima facie true and correct. The circuit court is authorized to set aside such findings only if they are against the manifest weight of the evidence. (Davern v. Civil Service Com. (1970), 47 Ill.2d 469, 269 N.E.2d 713; Suttle v. Police Board (1973), 11 Ill. App.3d 576, 297 N.E.2d 174.) A particular administrative finding may not be adjudged against the manifest weight of the evidence unless, from the record, it appears that an opposite conclusion is clearly evident. (Sudduth v. Board of Fire & Police Commissioners (1964), 48 Ill. App.2d 194, 198 N.E.2d 705; Bock v. Long (1972), 3 Ill. App.3d 691, 279 N.E.2d 464.) The mere fact that an opposite conclusion is reasonable or that the trial judge might have ruled differently will not justify reversal of the administrative findings. Crepps v. Industrial Com. (1949), 402 Ill. 606, 85 N.E.2d 5; Suttle v. Police Board.
 2 The sole evidence against plaintiff on the sleeping on duty charge was the testimony of Chief Sobel and his account of the incident was contradicted by plaintiff. However, the Board, as trier of fact, has the duty and the right to determine the credibility of the witnesses before it and, in light of Sobel's testimony, we do not believe it to be "clearly evident" that plaintiff did not sleep on the date alleged. Nor do we think the evidence requires a finding that plaintiff did not arrange for Nagle to obtain an illegal drug. Shlenski testified that plaintiff approached him and arranged for his friend Nagle to procure the drug. Nagle testified that he went to the drug store, accepted the pills, and left without conversation. Considering all the testimony, and recognizing the province of the Board to weigh the evidence and determine the credibility of the *868 witnesses, we conclude that the Board's findings on the sleeping and drug charges were not against the manifest weight of the evidence and the trial court erred in so ruling.
 3, 4 We also believe that the charges against plaintiff constituted cause for discharge. The pertinent section of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10-2.1-17) provides that a police officer may not be removed from office or discharged except for cause. Although the term "cause" is not defined in the statute, it has been construed as a substantial shortcoming which renders the continuance of the employee in his office detrimental to the efficiency and discipline of the service. (Rogenski v. Board of Fire & Police Commissioners (1972), 6 Ill. App.3d 604, 285 N.E.2d 230; Davenport v. Board of Fire & Police Commissioners (1972), 2 Ill. App.3d 864, 278 N.E.2d 212.) While the authority to remove is not arbitrary, a police board is accorded considerable latitude in determining what should constitute cause for discharge. A board's decision as to the existence of cause will not be reversed so long as its findings are related to the requirements of the service and not so trivial as to be arbitrary or unreasonable. (Nolting v. Civil Service Com. (1955), 7 Ill. App.2d 147, 129 N.E.2d 236.) Here, the evidence was sufficient to sustain the Board's findings that plaintiff had slept on duty and arranged for procurement of an illegal drug. Having determined plaintiff's guilt, the Board was required to evaluate the gravity of the violations and decide if the infractions were so substantial as to constitute cause for discharge. Plaintiff has conceded that sleeping on duty is a serious violation, significantly related to the efficient operation of the police department. The gravity of the drug procurement violation is, we think, self-evident. The Board determined that these infractions were seriously disruptive of departmental efficiency, discipline and morale, and warranted plaintiff's discharge. Its decision was reasonably related to the requirements of the police department, and its order should not have been reversed by the circuit court.
The Board also found plaintiff guilty of calling a fellow officer a vulgar name in the presence of other patrolmen. At oral argument, counsel for defendant conceded that this charge was much less serious than the other violations and, of itself, not so significant as to be the basis of an action for discharge. In light of this, and in light of our holding on the other charges of misconduct, we do not think it is necessary to determine the propriety of the Board's finding of fact on this matter.
The findings and decision of the Board that cause existed for the discharge of plaintiff were not arbitrary, unreasonable, or against the manifest weight of the evidence. The trial court, therefore, erred in reversing its order.
*869 For the reasons stated, the judgment of the circuit court of Cook County is reversed and the order of the Board is reinstated.
Judgment reversed.
McGLOON, P.J., and DEMPSEY, J., concur.