WILLIAM BLANKENSHIP *et al.*, Plaintiffs-Appellants, *v.* THE CIVIL
SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 76-689

Opinion filed August 10, 1977.

J. Dale Berry, of Cornfield and Feldman, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (Moshe Jacobius, Assistant Attorney General, and Greg Kinczewski, law student, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

William Blankenship and Ralph Notter, the plaintiffs, were employed by the Illinois Department of Corrections as Youth Supervisors at the Illinois Youth Center at St. Charles. The Department of Corrections instituted a proceeding to discharge the plaintiffs alleging that they were sleeping while on duty. The hearing officer of the Civil Service Commission found that the charges had been proved, but that the charges did not warrant discharge. He recommended a suspension of 30 days. The Civil Service Commissioners reviewed his findings and rulings and adopted them as the findings and rulings of the Commission. However, they found the charges warranted the discharge of the plaintiffs and the plaintiffs were discharged. The plaintiffs filed a complaint for administrative review under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*). The trial court affirmed and the plaintiffs bring this appeal.

The complaint does not question the finding that the plaintiffs were sleeping while on duty. The complaint requests that the decision of the Commission be reversed and that the plaintiffs be reinstated with appropriate compensation subject to terms and conditions consistent with established departmental disciplinary policies for offenses involving sleeping while on duty. The plaintiffs bring this appeal contending that falling asleep while on duty is not a shortcoming which is sufficiently substantial to warrant a discharge. To support their contention that their conduct was not sufficiently substantial to warrant discharge they assert that the disciplinary policy in practice was to assess a suspension of three days for an unaggravated offense of sleeping while on duty and a suspension of 15 days in a case involving aggravated circumstances. Further, the decision is arbitrary and a fundamentally unfair exercise of its powers. The defendants respond to the contention concerning the established disciplinary policy by stating that the established disciplinary policy consists of treating each case individually based on all the relevant facts available. Factors that should be taken into consideration in determining the disciplinary action to be imposed in a given situation includes the individual's past performance as well as the individual's offense as it related to the security of the institution.

The superintendent of the institution, Robert Thomas, testified that on the evening of April 13-14, 1975, the plaintiffs, Mr. Nance, Mr. McDaniels and a shift supervisor, Mr. Wilson, were assigned to maintain security functions at St. Charles during the 10 p.m. to 6 a.m. shift. St. Charles is a

medium security facility housing 250 residents between the ages of 13 and 20. Some of the offenders were confined on charges of murder, rape, robbery and other very serious offenses. In addition, there is a reception center which means that all male juveniles who come into the Department of Corrections spend their first seven to nine days at the facility prior to being transferred to maximum security or the St. Charles facility or to other facilities within the Department of Corrections. The ordinary duties of the security force on the 10 pm. to 6 a.m. shift are to patrol the cottages, drive the car around the institutional grounds, answer trouble calls and respond to any calls from the staff in the individual cottages. At approximately 10:30 p.m. on April 13, three residents ran away from one of the cottages. Besides the normal duties the plaintiffs had the responsibility of looking for the runaway residents on the grounds of the institution. In addition to those previously mentioned, five other members of the staff were called out to assist in looking for the runaways.

Victor Lenkaitis, the supervisor of grounds and buildings, testified that he was called to search for the runaways at about 10:30 in the evening. At about 5 a.m. on April 14, he returned from searching the surrounding areas off the grounds of the institution. As he returned to his office he heard a motor running and saw lights behind the greenhouse. He drove to the area and observed some men sleeping in a security car. He drove to within a short distance of the vehicle and shined the spotlight and headlights from his truck into the car. He got out of his truck and looked to see if the people were inside. It appeared that there were three persons sleeping. Lenkaitis drove back to his office and called Superintendent Thomas who drove over and picked up Lenkaitis and they both drove down to the security car. Thomas got out and walked up to the car and shouted to the men to wake up. He then opened the door of the car containing the plaintiffs and again shouted to them to wake up.

Notter testified that he had been patrolling the grounds in the car and about 5 a.m. picked up McDaniels, Nance and Blankenship. Blankenship drove and Notter got into the back seat where he dozed off, not on purpose. The next thing he remembers was that Thomas opened the car door and told them that they should all get out and that they were suspended.

Blankenship testified that about 11 p.m. he was taken from his job in a cottage because he was told they needed extra assistance to work on security and to patrol around the grounds. At about 5 a.m. after patrolling the grounds in the car, the car was parked between the farm and another building so that he could see the southwest fence where most runaways would go. He stated that he fell asleep and that he did not do it on purpose.

McDaniels testified in substantially the same manner and stated that near the end of the shift he just dozed off. Nance did not testify.

On the issue of the policy of the institution it was stipulated that the personnel forms of four employees, none of those involved in this event, would be introduced into evidence. The personnel forms show that three employees had been suspended for three days apiece for sleeping while on duty while one was suspended for a period of 15 days. Fred Rogers was called as a witness by the plaintiffs and testified that he is employed as a youth supervisor in a higher category. He is president of the local union and the chief steward. He was familiar with the four who had received suspensions. In the case of the one given the 15-day suspension he said that that employee was assigned to a disciplinary cottage where students are placed in individual rooms. He believed that the consequences of an employee sleeping on duty in the cottage were serious. One of the employees suspended for three days was assigned to the main gate. His responsibilities were to check out all traffic. He believed that this was a vital security position. When asked if based on his experience a suspension of 15 days was a customary discipline for sleeping while on duty for the type of offense that was committed, he responded that it was hard to say because it had never happened before. Thomas testified that the policy was that each case was treated individually to determine the proper type of action which should be taken for that individual. The year that Thomas had been at St. Charles in most cases a three-day suspension was given for the first offense, or 15 days in case of certain circumstances. He never had an occasion to discharge an employee for sleeping on duty. He would take into consideration the individual's past performance, the situation as it relates to the security and custody of the staff and residents. In the case involving the 15-day suspension an employee was working a security cottage which has 16 individual locked rooms. It is a serious offense but sleeping there does not jeopardize security.

■■■ The plaintiffs assert that the evidence established that the basic penalty is a three-day suspension for the employee's first offense while sleeping on duty. They acknowledge that Thomas also testified that in some circumstances, where the offense was of "a serious" nature, a 15-day suspension had been imposed. The plaintiffs contend that the Commission's finding of cause to discharge the plaintiffs is contrary to the manifest weight of the evidence because of the established disciplinary policy. In support of their contention they cite a Civil Service Commission case, *Department of Corrections v. Cushman,* Case No. 3-73, and assert that in the *Cushman* case the Commission itself recognized the significance of established disciplinary policies in determining whether a cause for discharge exists. Apparently the plaintiffs are referring to a statement of the hearing officer, adopted by the Commission, to the effect that the only evidence concerning institution policy was that a 20-day suspension was given for the first offense. The

hearing officer noted that the testimony concerning the institution policy was not refuted and that there was no showing of any aggravated circumstances in order to substantiate the reasons for the disciplinary punishment desired. In the case at bar there is evidence by Thomas to refute the inference the plaintiffs would draw from the evidence of the suspension of the four as consituting the policy of the institution. Thomas testified that a suspension of three days under ordinary circumstances or 15 days under aggravated circumstances was not the policy. He stated that the policy was to treat each individual case and determine the type of action that should be taken. To be taken into consideration would be the individual's past performance and the situation as it related to the security and custody of the staff and residents.

*Sullivan v. Myers* (1961), 32 Ill. App. 2d 454, 178 N.E.2d 410, is cited as being in accord with *Cushman*. At issue here, according to the plaintiffs, is whether the evidence shows a policy on discharge for sleeping while on duty. In *Sullivan* the policy is stated in the rules of the Department of Personnel. *Sullivan* is not in point.

The record does not support the plaintiffs' contention that there is a policy of a three-day suspension in ordinary circumstances and 15 days under aggravated circumstances. Superintendent Thomas directly contradicted the assertion and the four suspensions referred to do not constitute a binding policy. The Commission had the right to consider the nature of the offense. Here, the offense involved the security of the entire institution on a night that had more than the usual security problems. The conclusion that the Commission drew that sleeping while on duty was a sufficient breach of security procedures to warrant discharge was appropriate. The Commission is in a better position to assess the effect of this type of conduct in the operation of the institution. *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782.

■■ The plaintiffs also contend that the decision was an arbitrary and fundamentally unfair exercise of its powers as recognized by the equal protection clause of the Fourteenth Amendment of the United States Constitution. In support of this position the plaintiffs cite *Rockwell-Standard Corp.* (1963), 41 Lab. Arb. 344, where the arbitrator said that unless a penalty is consistently applied it is impossible to avoid the danger of unequal treatment or outright discrimination. He further commented that discipline must be "level-handed." Given the circumstances attendant here, we do not see that unequal treatment has been demonstrated.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.