DONALD BURTON, Plaintiff-Appellee, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellants.

First District (5th Division)  No. 77-101

Opinion filed February 24, 1978.

William J. Scott, Attorney General, of Chicago (Rick Allan White, Assistant Attorney General, of counsel), for appellants.

Edmund M. Burke, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Donald Burton, brought this action pursuant to the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) seeking to review the order of the defendant, Illinois Civil Service Commission (Commission), dismissing him from employment with the defendant, Illinois Department of Revenue (Department). The circuit court reversed that order and reinstated plaintiff, and it is from that judgment that this appeal is taken. We affirm. The pertinent facts follow.

There is no dispute concerning the misconduct which lead to plaintiff's attempted discharge. Plaintiff is a Security Fraud Investigator II with the Department. On January 22, 1976, plaintiff was present in court where a continuance was granted in a matter involving the investigation of a taxpayer by the name of Michael Dix, who was charged with violating the withholding provisions of the Illinois tax law. The Dix matter was assigned to Investigator Archie McDonald, who was also present in court on January 22.

In the afternoon of that same day, plaintiff approached McDonald in the latter's office and placed a $20 bill on his desk. McDonald recalled that plaintiff stated: "This is from Dix. Well don't worry about it, Dix is going to plead guilty anyway." McDonald reported the incident to his supervisor, Jake Lynn and Harold Sellyer. Plaintiff was then summoned into Sellyer's office and questioned regarding the incident. Plaintiff admitted giving McDonald the money but stated that there must have been a misunderstanding. He had given McDonald the money to pay off a

football bet plaintiff had lost to Anthony Weeditz, a fellow employee.

After this meeting plaintiff approached Weeditz and asked him to verify that he had won $20 from plaintiff on a football bet, if anyone asked him. Later, plaintiff's supervisor, Edward Neafsey, asked Weeditz about the bet and Weeditz responded as plaintiff had asked him. That night, plaintiff called Weeditz and explained the reason for his earlier request. Weeditz recalled that plaintiff told him the $20 came from a taxpayer that he had known for a number of years. This taxpayer was being prosecuted and had given plaintiff $20 to give to McDonald, the investigator on the case, for some small favors McDonald had done for him during the course of the investigation. Plaintiff explained the coverup story he had fabricated to explain the passing of the $20 to McDonald. After hanging up, Weeditz called Neafsey and reported the conversation he had just had with plaintiff.

Following these events plaintiff took some personal leave time that he had accumulated. Upon his return to work on February 10, 1976, he was confronted by Sellyer with the fact that additional information indicated his earlier explanation of the incident was untrue. Plaintiff then recanted his prior statements and stated that the truth was that he was only transferring money from Dix to McDonald. Dix had stated that McDonald had been very considerate during the investigation and he wanted to show his appreciation by having McDonald take his wife to dinner on the money provided by Dix. Plaintiff stated that, in fact, Dix had only given him $8 and that he had made up the difference out of his own pocket.

On February 13, plaintiff was served with a 10-day suspension, which ran from February 18 to February 27. At this point the investigation was complete and the report was forwarded to the Director of the Department of Revenue, Robert Allphin, on or about February 16. The 10-day suspension notice listed "accepting a gratuity from a taxpayer" as the reason for the disciplinary action.

On February 25, Allphin concluded that plaintiff should be discharged. Subsequently, a notice of suspension pending discharge was served on plaintiff which listed the reason for suspension as:

> "During the course of the suspension immediately prior to this Suspension Pending Discharge, investigation revealed that Mr. Burton violated Department of Revenue policy in that he accepted a gratuity from a taxpayer and attempted to cause another employee to accept same and provided false information to agency staff in an attempt to cover up his wrongdoing."

In addition, in his written statement of charges for the discharge of plaintiff, Allphin stated:

> "Donald G. Burton, a Security and Fraud Investigator II with the

Department of Revenue, did willfully accept a gratuity from a taxpayer on January 22, 1976. For this act, which constitutes unethical conduct and a violation of departmental and state policy forbidding same, Mr. Burton was suspended for a period of ten days February 18 through 27, 1976.

Our investigation and subsequent review of the above cited act lead to the discovery of two additional improper acts of Mr. Burton which constitute cause for discharge:

> (1) Mr. Burton attempted to cause a fellow employee to commit an unethical act by giving said employee the gratuity referred to in paragraph one above.
>
> (2) Mr. Burton willfully provided false information to investigative staff conducting an official investigation into the incidents cited above. Provision of such false information constitutes improper conduct unbecoming of an employee of this agency."

A hearing was had before Larry K. Gehman, a hearing officer for the Civil Service Commission. At this hearing the testimony indicated that all investigative reports on this incident were concluded before imposition of the initial 10-day suspension. Philip Mitchell, who at the time of this incident was the manager of the Department's Investigation Division, testified that he received the investigative report on February 12 or 13 and later forwarded it to Allphin. He also discussed the matter with Raymond Stroh, the Department's head of personnel. Particularly, he asked Stroh what measures could be taken to preclude plaintiff's reporting for work "pending some determination as to what steps were to be taken." Stroh responded that plaintiff should be suspended for "a period which would permit a determination by the director's office." Mitchell later became concerned that the 10-day suspension would adversely affect the Department's ability to proceed with a discharge, but was assured by Stroh that this was not the case. At the time Mitchell informed plaintiff of his 10-day suspension, Mitchell had concluded that he would recommend plaintiff's discharge upon forwarding the report to the director.

Raymond Stroh testified that the director has often indicated that division managers have the power to either suspend or suspend pending discharge, after informing the director's office of the matter. He stated that he advised Mitchell that he could suspend pending discharge, but that Mitchell said he "was uncertain of a discharge but could we suspend until that decision." Together they concluded a 10-day suspension was sufficient to allow a further decision to be made concerning a discharge, or other discipline. In a later meeting with both Mitchell and Allphin they discussed the matter of extending the suspension. Stroh got advice on this matter from persons in the Department of Personnel, who advised them

that they could (1) impose another suspension on plaintiff, "since it was a continuing thing that was pending the decision on discharge," or (2) amend the first suspension up to 30 days. They chose the former route and suspended plaintiff pending discharge. Stroh stated that in his 10 years with the Department he had never before seen such a procedure followed wherein a series of suspensions was imposed on an employee.

Robert Allphin testified that his name was signed to the initial 10-day suspension notice by an assistant, Frank Fiorite. This had the same effect as if Allphin himself had signed it, since Fiorite had full authority to act in such matters in the director's name. Allphin stated that his decision to discharge plaintiff was based solely on the investigative report completed by February 13, which had been forwarded to him along with Mitchell's recommendation of a discharge.

The hearing officer, based on the testimony adduced before him, concluded as follows:

"Petitioner argued that the intent from the very beginning was to suspend the Respondent pending discharge to obtain time to complete the investigation and thereafter a decision would be made whether Respondent was to be finally discharged. The facts belie this situation. The personnel officer of Petitioner is a long time employee and full well should know the significance of a 10-day suspension versus a suspension pending discharge. The two transactions have never been interchangeable. The evidence was further clear that indeed all investigations had been completed at the time Respondent's 10-day suspension began. There were no more facts to be gleaned through further investigation to allow a decision to be made. The Director himself testified that Mr. Fiorite had authority to make final decisions on disciplinary actions. It is apparent that Mr. Fiorite made the decision to suspend Respondent for 10 days. Obviously upon reviewing that decision the Director felt that his subordinate had made a gross error in not discharging the Respondent. The Hearing Officer as well feels that such a gross error was made by Mr. Fiorite, however, as per the testimony of the Director, Mr. Fiorite had the authority to do what he did. Once Respondent's suspension was final it was to [sic] late to raise the penalty. It is therefore concluded that this Respondent cannot be discharged for this offense.

## RECOMMENDED DECISION

IT IS HEREBY DECIDED that the charges approved by the Director of Personnel have been proved and that such charges would normally warrant discharge. However, since Respondent had been previously punished by a 10-day suspension for these

charges, the motion to dismiss is sustained and Respondent is hereby reluctantly reinstated to his position with the Department of Revenue, State of Illinois."

The Civil Service Commission rejected the conclusion of its hearing officer and in so doing stated:

"FROM AN EXAMINATION OF THE EVIDENCE, OUR HEARING OFFICER HAS CONCLUDED THAT CAUSE FOR DISCHARGE WOULD EXIST, EXCEPT FOR HIS CONCLUSION THAT THE DEPARTMENT IMPOSED A TEN-DAY SUSPENSION ON THE RESPONDENT FOR THE PARTICULAR OFFENSE AND THAT THE DEPARTMENT IS THEREBY PRECLUDED FROM LEVYING THE FURTHER PENALTY OF DISCHARGE. WE DO NOT AGREE WITH OUR HEARING OFFICER'S ANALYSIS.

WE NOTE THAT THE WORDING OF THE TEN-DAY SUSPENSION FORMALLY DISCIPLINED RESPONDENT FOR TAKING A GRATUITY. THE SUSPENSION WAS NOT LEVIED FOR AND DID NOT INCLUDE THE OTHER TWO CHARGES. THE EVIDENCE SHOWED RESPONDENT TO BE GUILTY OF THE TWO CHARGES WHICH WERE NOT INCLUDED IN THE DISCIPLINE. WE CONSIDER THE SUBSEQUENT CHARGES TO BE SEPARATE OFFENSES AND WHICH CONSTITUTE CAUSE FOR DISCHARGE INDEPENDENT OF THE EARLIER CHARGE FOR WHICH HE RECEIVED A SUSPENSION. CAUSE FOR DISCHARGE EXISTS AND IS SO ORDERED."

This decision in turn was reviewed and reversed by the circuit court, which reinstated plaintiff to his position as an investigator. The court reasoned that:

"Well, the whole philosophy underlying the theory of double jeopardy is apropos here and it is for that reason that I think that estoppel does lie, the state is estopped. They got one bite of the apple and I don't think they can have two, so I'll reverse it."

The Department and Commission appeal from this order.

OPINION

■■ Defendants concede before this court that they may not modify or alter a punishment previously imposed on an employee. Any such disciplinary action would constitute a final determination by the agency, and it is well settled that an administrative agency may only reconsider, modify, or alter its decisions where authorized to do so by statute. (*Pearce Hospital Foundation v. Illinois Public Aid Com.* (1958), 15 Ill. 2d 301, 154 N.E.2d 691; *Klaren v. Board of Fire & Police Commissioners* (1968), 99

Ill. App. 2d 356, 240 N.E.2d 535.) Defendants in the instant case have been granted no such statutory power. Thus, the threshold question which this court must consider in this case is whether plaintiff's initial 10-day suspension was imposed as a discipline for his entire course of misconduct, or as a discipline for only one of three separate acts of misconduct.

■■ The Commission clearly concluded that the latter had occurred, and that plaintiff's three acts of misconduct were punished in two separate disciplinary actions. The Commission's findings in this regard, for purposes of administrative review, must be considered prima facie correct and will not be disturbed unless manifestly against the weight of the evidence. (*Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13, 244 N.E.2d 598.) So long as findings of an administrative agency are based on substantial evidence and they do not go against the manifest weight of the evidence, courts will not substitute their own independent judgment. (*Hruby v. Board of Fire & Police Commissioners* (1974), 22 Ill. App. 3d 445, 318 N.E.2d 132.) For a particular administrative finding to be adjudged against the manifest weight of the evidence an opposite conclusion must be clearly evident from the record. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126.) We believe that such an opposite conclusion is evident from the record before us in the instant case.

The primary evidence supporting the Commission's finding consists of the written notices of suspension. The February 13 notice of the 10-day suspension merely recited the acceptance of a gratuity as the basis for the discipline. The written notice of the suspension pending discharge recited as its basis of action all three offenses; accepting a gratuity, passing it on to a fellow employee, and providing false information in an effort to cover up his wrongdoing. We note, however, that this second notice incorrectly indicates that it was during the course of the 10-day suspension that investigation revealed these offenses. In fact, the investigation was completed and all offenses known when the 10-day suspension was approved by Fiorite, an action tantamount to Director Allphin himself imposing the discipline.

Further evidence supporting the Commission's finding are the written charges for discharge prepared by Allphin. These specifically recite that plaintiff had previously been punished for accepting a gratuity by imposition of the 10-day suspension. Therefore, plaintiff's discharge was being sought on the basis of the other two improper acts. However, to conclude that such documents constitute a sufficient basis for the Commission's determination would, in effect, be the same as elevating form over substance. We concur rather with the hearing officer's finding

842

that the facts of the case belie a conclusion that these acts were being disciplined separately.

■■ Certainly the findings of the hearing officer were not binding on the Commission. However, where an agency has rejected the findings of its examiner, the reviewing court must consider the record as a whole and accord to the findings of the trial examiner such relevance as they may reasonably bear on the determination of whether substantial evidence supports the decision being reviewed. (*Nichols v. Cohen* (S.D. Ill. 1968), 290 F. Supp. 207.) The evidence supporting a final decision may become less substantial when an agency has rejected its examiner's findings. *Nichols v. Cohen.*

■■ In the instant case a review of the testimony adduced before the hearing officer inevitably leads to the conclusion that the Department was in fact suspending plaintiff for 10 days for his entire course of misconduct, and not just for the initial act of accepting a gratuity from Dix. All the transgressions were known by Mitchell, and the investigative report completed, before he served plaintiff with his 10-day suspension. Stroh informed Mitchell that he could *either* suspend plaintiff, or suspend him pending discharge. As noted by the hearing officer, these are two distinct disciplinary actions which are in no way interchangeable. Mitchell finally decided to suspend plaintiff for 10 days, as approved by Fiorite; however, it is evident that his intent was to suspend plaintiff while the director decided the question of a discharge. Thus, while the intent, as we read it, was to suspend pending discharge, the fact remains that such a sanction was not imposed. Instead, only a 10-day suspension was imposed.

Stroh's testimony also supports our conclusion concerning the motivation for the initial suspension. He related to the hearing officer that he and Mitchell concluded that only a 10-day suspension was needed, since that was sufficient time for a final decision to be made by the director's office. When discussing the final action to be taken with both Allphin and Mitchell, Stroh was incorrectly advised by the Department of Personnel that since this was a "continuing thing that was pending the decision on discharge" they could impose a second suspension or amend the first suspension to 30 days. They chose the former course and suspended plaintiff pending discharge. In effect, however, such action constituted an improper reconsideration and alteration of the penalty to be imposed for defendant's conduct.

As a final indication that the hearing officer's decision was in fact correct, we note the arguments made to the trial court during review of the matter. While attempting to uphold the Commission's action on the basis of separate punishments for separate offenses, our review of the record reveals that defendants have essentially admitted they were in fact

acting to modify the earlier suspension, or acting to correct the mistake of not initially suspending plaintiff *pending discharge*. In their memorandum of law in opposition to plaintiff's complaint for administrative review defendants recite that:

> "It is true that all of the information gathered concerning the plaintiff's conduct was known by Phil Mitchell, Chief of Investigations, Chicago Office, as of February 13, 1976. On the same day that he served the 10 day suspension upon the plaintiff for 'accepting a gratuity from a taxpayer' he also forwarded the investigative file along with his recommendation that plaintiff be separated from employment to Director Allphin's office in Springfield. *Clearly, he was seeking the removal of plaintiff from the office pending the decision of the Director as to the appropriate discipline to be accorded the plaintiff.*" (Emphasis added.)

Furthermore, in their oral presentation to the court defendants stated:

> "It is clear that Mr. Mitchell in seeking and gaining a ten-day suspension for Mr. Burton was only attempting to remove him from office, *pending the final resolution of this matter by the Director.*" (Emphasis added.)

Again, defendants stated to the court:

> "It is clear that the intention of the Department, *at all times*, was to suspend Mr. Burton, *pending the decision by the Director*, that decision finally being that Mr. Burton should be separated from employment." (Emphasis added.)

While further arguing before both the trial court and this court that defendants were not estopped to discharge plaintiff for the two "additional" offenses, we find that the aforementioned statements contradict such a claim. Although the original intent was to suspend plaintiff pending the director's decision on discharge, the action taken, however, was only that of a simple 10-day suspension. Whatever mistaken belief generated the action taken, it may not be corrected by the defendants' subsequent action of separating the charges against plaintiff.

We think the record clear that the initial sanction was imposed in relation to plaintiff's entire course of conduct. The final reports were in before the initial suspension, and Mitchell knew he was recommending plaintiff's discharge when he was serving him with the 10-day suspension. Under such circumstances, to uphold defendants' actions would, as noted previously, allow them to reconsider the issue of plaintiff's punishments, and in effect modify their previous order and correct their previous mistake. Defendants have no such statutory power of reconsideration and, like plaintiff, are bound by their final decision to impose a 10-day suspension on plaintiff. They may not alter that decision by, as an

afterthought, separating the offenses commited by plaintiff. Thus, we conclude that the Commission's conclusion, rejecting the findings of its hearing officer, was against the manifest weight of the evidence.

In light of the foregoing we find it unnecessary to determine the more complex and perplexing issue in this case. Namely, if the Commission's conclusions were correct, may an employee properly be punished in such a piecemeal fashion for "separate" offenses, when all of the offenses are known to the agency at the time of the initial proceeding or punishment. From our research in this area, the law on this question has yet to be settled.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.