THE DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Plaintiff-Appellant, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-3147

Opinion filed January 19, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Gary E. Medler, Assistant Attorney General, of counsel), for appellant.

Jacob Pomeranz, of Cornfield and Feldman, of Chicago, for appellee Willie Mars.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This action was brought under the Illinois Administrative Review Act by the Department of Mental Health and Developmental Disabilities of the State of Illinois (the Department) to review a decision of the Civil Service Commission (the Commission). The Commission found that written charges seeking the discharge of Willie Mars had been proved, but decided a 60-day suspension was a more appropriate punishment. The circuit court of Cook County affirmed the Commission's decision. The Department appeals.

The incident that precipitated this action occurred on August 20, 1979, at the Elisabeth Ludeman Center in Park Forest, Illinois. Willie Mars arrived for work as a Mental Health Technician I at the Center. He was one of three staff members responsible for eight mentally retarded residents of the facility. On the morning of August 20, the other two staff members were not present, and Mars was compelled to carry out the duties by himself. As part of these duties, Mars took the eight residents for a walk around the grounds of the Center and to the dentist. While returning from the dentist, a 16-year-old resident (J. N.) who was 6 feet tall and weighed 195 pounds threw a tantrum and charged at Mars a number of times. Mars, who was familiar with the difficulties in handling J. N., responded by flipping J. N. over his back three times. This resulted in numerous bruises to J. N.'s legs.

The entire staff of Ludeman, including Mars, had previously been given specific instructions on the proper method of handling J. N. The instructions were issued by court order pursuant to an earlier lawsuit filed by J. N.'s guardians against the State for abusive treatment of J. N. which had resulted in two broken and dislocated shoulders. The court order stated that whenever J. N. threw a tantrum the Ludeman employees should ignore the behavior, avoid grabbing or holding J. N., maintain him in sight and act to protect the other residents from harm.

On October 2, 1979, the Department initiated discharge proceedings against Mars charging that he used neglectful conduct and unreasonable force to control J. N. Mars, who had been employed by the Department since November 1977, demanded a hearing pursuant to section 11 of the Illinois Personnel Code (Ill. Rev. Stat. 1979, ch. 127, par. 63b111). Hearings were held before a hearing officer on January 31, 1980, and February 28, 1980. Mars asserted that he did everything possible to comply with the rules and never used aggressive force on J. N. He claimed that J. N. fell

over him when he (Mars) ducked and dodged to avoid J. N.'s charging. He asserts on appeal that his use of the word "flipped" at the hearing was simply a misexpression.

On May 1, 1980, the hearing officer determined that the written charges seeking Mars' discharge had been proved. The decision was based on Mars' testimony that he flipped J. N. three times. The hearing officer found it implausible that Mars would be fooled by J. N. three different times and forced to duck and dodge, causing J. N. to flip over him each time. The hearing officer also considered Mars' disciplinary record, which consisted of a three-day suspension on March 8, 1979, for abusive action towards another employee at Ludeman, a five-day suspension on May 22, 1979, for unauthorized absence from work for a day and a half, and being docked for arriving late to work on June 22, 1979. In addition to concluding that Mars used neglectful conduct and unreasonable force on J. N., the hearing officer found that Mars wilfully violated J. N.'s court-approved behavior program. The officer did admit, however, that it was difficult for an outsider to second guess what should have been done in the situation which Mars faced. The hearing officer recommended that Mars be discharged.

The Commission adopted the hearing officer's findings and concluded that the written charges had been proved. The Commission believed, however, that the charges did not warrant Mars' discharge. It concluded that a 60-day suspension was more appropriate because of the "difficult situation Mars had encountered in dealing with a difficult and aggressive patient." The Department filed a complaint for administrative review in the circuit court of Cook County. On November 14, 1980, the trial court held that the Commission's order was supported by the manifest weight of the evidence and affirmed its decision to suspend Mars for 60 days.

The Department's first contention on appeal is that the trial court applied an improper standard of review in affirming the Commission's decision to suspend Mars rather than discharge him. The trial court's order (apparently prepared by Mars' attorney) was entered on November 14, 1980, and stated that the Commission's decision "was supported by the manifest weight of the evidence and is hereby affirmed." The Department argues that the proper standard of review is not "manifest weight of the evidence" but whether there is a sufficient basis for the Commission's conclusion that cause for discharge did not exist. The Department's other contention is that the Commission's decision imposing a 60-day suspension, rather than a discharge, was arbitrary, unreasonable and unrelated to the requirements of service in light of the charges found proved against Mars. This, asserts the Department, justifies reversal.

■■ It appears that the Commission agrees that an erroneous standard of review was applied by the trial court. In any event, the Department is correct in arguing that manifest weight of the evidence is the wrong standard. In *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560, the plaintiff was a police officer discharged by the Chicago Police Board for violating departmental rules. In a suit for administrative review, the circuit court affirmed the board's discharge. The plaintiff appealed. The appellate court stated:

"The pivotal question presented is not whether the board's decision was against the manifest weight of the evidence but whether under that evidence there was sufficient cause to remove [the plaintiff] from the police department." 34 Ill. App. 3d 1072, 1075.

Findings of fact by administrative agencies are *prima facie* true and correct. (Ill. Rev. Stat. 1979, ch. 110, par. 274.) Agency determinations of cause for discharge, however, are not afforded the same presumption and are subject to judicial review. (*Fox v. Civil Service Com.* (1978), 66 Ill. App. 3d 381, 388, 383 N.E.2d 1201.) While courts should not assume the function of a super-commission in determining what constitutes sufficient cause (66 Ill. App. 3d 381, 390), it is their function to review charges brought for discharge to determine if they are so trivial as to be unreasonable or arbitrary, if the agency acted on evidence that fairly tended to sustain the charges, and if the agency's decision sufficiently relates to the requirements of service. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522; *Christenson v. Board of Fire & Police Commissioners* (1980), 83 Ill. App. 3d 472, 476, 404 N.E.2d 339.) In determining cause for discharge, as opposed to findings of fact, "[m]anifest weight of the evidence is not the applicable standard of review and the Commission's determination may be overturned if trivial, arbitrary or unreasonable." *Fox v. Civil Service Com.* (1978), 66 Ill. App. 3d 381, 388.

■■ The trial court's handwritten order reveals that it applied the wrong standard of review. The question before this court, however, is the correctness of the result reached by the trial court and not the correctness of the trial court's reasoning. (*People v. York* (1963), 29 Ill. 2d 68, 71, 193 N.E.2d 773.) The issue, therefore, is whether the Commission's decision to impose a suspension, rather than a discharge as recommended by the hearing officer, was arbitrary, unreasonable or unrelated to the requirements of service.

■■ The Commission's decision not to discharge Mars even though it concluded the charges against him had been proved was based on its expressed belief that a 60-day suspension was more appropriate "because of the difficult situation Mr. Mars had encountered in dealing with a difficult and aggressive patient." A review of the record reveals that the

Commission's decision was not arbitrary, unreasonable or unrelated to the requirements of Mars' service.

The record shows that on August 20, 1979, through no fault of his own, Mars alone was compelled to carry out the duties of three staff members. In the course of these duties Mars took eight mentally retarded residents on a walk and to the dentist. While returning from the dentist, a 6-foot-tall, 195-pound male resident had a temper tantrum. In response to the resident's charging at him, Mars caused the resident to be flipped three times, causing bruises to the resident's legs. Although Mars claimed he never grabbed or held the resident and that the flipping occurred when the charging resident fell over him (Mars), the Commission agreed with the hearing officer that Mars violated specific instructions not to manhandle that particular resident.

The Illinois Supreme Court was faced with a similar situation in *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885. In that recent case, the Civil Service Commission adopted the findings of the hearing officer that an employee's punching and kicking of a mental health patient "was not calculated but rather was the result of his sudden loss of control which under the circumstances may be understandable although not condoned." (85 Ill. 2d 547, 550.) The Commission then adopted the hearing officer's conclusion that a suspension of the employee was appropriate. The trial court, however, concluded that the employee's conduct constituted sufficient cause for discharge as a matter of law and remanded the case to the Commission with instructions to enter an order discharging the employee. The appellate court affirmed the trial court's ruling.

In reversing the trial and appellate courts and affirming the Commission, the Illinois Supreme Court noted the two-step process involved in reviewing an administrative agency's decision whether to discharge an employee. The first step is to determine if the agency's findings of fact are contrary to the manifest weight of the evidence. (85 Ill. 2d 547, 550.) The second step is to determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. (85 Ill. 2d 547, 551.) The Commission's decision as to discharge can be overturned only if it is arbitrary, unreasonable, or unrelated to the requirements of service. (85 Ill. 2d 547, 551-52.) The court held that the Commission's decision was not arbitrary, unreasonable or unrelated to the requirements of service and affirmed the Commission's suspension order.

None of the cases cited by the Department convinces us to reverse the decision of the Commission and the trial court. In fact, most of those cases, while resulting in the employee's discharge, reversed the trial court and affirmed the decision of the Commission. (See, *e.g., Parkhill v. Civil Service Com.* (1978), 58 Ill. App. 3d 291, 374 N.E.2d 254; *Epstein v. Civil*

*Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *appeal dismissed* (1978), 435 U.S. 911, 55 L. Ed. 2d 502, 98 S. Ct. 1463; *Samter v. Department of Public Welfare* (1956), 9 Ill. App. 2d 363, 132 N.E.2d 810.) There is no showing that the Commission's decision was arbitrary, unreasonable or unrelated to the requirements of service, and the decision of the trial court affirming the Commission is therefore affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.