SECRETARY OF STATE, STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JACOB M. KUNZ, Defendant-Appellee—(The Merit Commission, State of Illinois, Defendant).

Fourth District   No. 4—83—-0010

Opinion filed August 2, 1983.

MILLS, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (William S. Hanley and Jane Lynk, Special Assistant Attorneys General, of counsel), for appellant.

Stewart R. Winstein, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The Secretary of the State of Illinois (Secretary) appeals from an order of the circuit court of Sangamon County, sitting in administrative review (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*), which affirmed an order of the Merit Commission for the Office of the Secretary of State (Commission) (Ill. Rev. Stat. 1981, ch. 124, par. 109). The Secretary sought discharge of the defendant Kunz, but the Commission, as affirmed by the circuit court, imposed a penalty of 75 days' suspension.

The case has had an anfractuous procedural history, some of which must be recited here in order better to understand the issues. Kunz was the facility supervisor for the office of the Secretary in Aledo, Illinois. The Secretary discharged him on February 22, 1979, on charges: (1) sleeping on the job; (2) allowing a driver's license applicant to take a practice written test; and (3) taking personal time off during working hours to get a haircut. Kunz sought and received a hearing before the Commission.

The evidence was not extensive. A clerk in the Aledo facility testified that Kunz took naps at work sometimes as frequently as twice a day for periods from 30 minutes to an hour; according to her testimony, Kunz placed three chairs together as a sort of bed. She also testified that during the fall of 1978 Kunz permitted a friend to review the written driver's examination as a practice test and that Kunz left the facility to get a haircut during working hours. Two officials from the Secretary's office testified that when confronted with the charges, Kunz admitted to them that he had done the things.

Kunz himself testified that he took naps only during coffee

breaks; that he got the haircut during inclement weather when he could not administer road tests to applicants; and that he did not give his friend a practice test, he only showed him the format of the new test.

The hearing officer concluded that the charges had been proved and recommended discharge. The Commission agreed that the charges had been proved, but determined that the punishment should be only a 75-day suspension because of the Secretary's failure to apply a certain personnel rule, designated Rule 2—690, of his office which provided for corrective discipline (counselings, warnings, suspensions, or a combination of the three) prior to discharge.

The Secretary then appealed the Commission's order to the circuit court which remanded the case to the Commission holding that the Commission "was without authority to enter a finding that Personnel Rule 2—690 was being ignored or not followed by the Secretary of State, absent any evidence in the record supporting such conclusion."

A second hearing was then held. Almost all the evidence concerned the showing of the driver's test. Kunz again testified that he showed only a format of the new test and that before this proceeding he had received no reprimands from anyone in a supervisory capacity in the Secretary's office. A division administrator in drivers' services testified that the tests are not for the public's use and are kept in a safe. He testified, as at the first hearing, that Kunz admitted to him that he allowed a friend to take a practice test and that showing a test to an applicant was grounds for immediate discharge. A deputy director of the department of personnel of the secretary's office also testified that such a showing of a test was grounds for immediate discharge.

The hearing officer recommended a 75-day suspension, stating that the test disclosure did not warrant discharge. No reference in this second report was made to the other charges. The Commission concurred. The Secretary then appealed to the circuit court which reversed, holding that the test disclosure warranted discharge and that progressive or remedial discipline was unwarranted.

Kunz then appealed the circuit court's order to this court. However, the record was incomplete, and we remanded to the circuit court with directions to consolidate the records of the two hearings and to proceed with a hearing upon the consolidated record. The circuit court then affirmed the findings of the Commission and the 75-day suspension. It is this order which is the subject of the instant appeal by the Secretary.

The positions of the parties are clearly drawn. The Secretary asks

us to reverse the Commission's order of suspension and remand with direction to enter an order of discharge. Kunz asks us simply to affirm, asserting that this court lacks the power to instruct the Commission to follow the Secretary's decision to discharge him.

■ The guidelines have been stated by the supreme court in *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (DuFrenne, appellant) (1981), 85 Ill. 2d 547, 426 N.E.2d 885. The court described a two-step process for a reviewing court in dealing with an administrative agency's decision whether or not to discharge an employee: (1) to determine whether the agency's findings of fact are contrary to the manifest weight of the evidence, and next (2) to determine whether the findings of fact provide a sufficient basis for the conclusion that cause for discharge does or does not exist. The latter is not tested by the manifest weight of the evidence, but whether the decision is arbitrary, unreasonable or unrelated to the requirements of the service. *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (Mars, appellant) (1982), 103 Ill. App. 3d 954, 431 N.E.2d 1330.

In the case at bar the first step is not really controverted. Kunz, although arguing that his conduct did not merit discharge, does not contest the findings of fact nor that the charges against him were proved. The second step is the pivotal issue in this case.

The attempts on the part of courts to tinker with punishments meted out by administrative agencies has met with very little success. DuFrenne is a premier example. Others are collected in Mars. (103 Ill. App. 3d 954, 431 N.E.2d 1330.) Obviously this stems from the deference which courts are required to pay to the findings and the actions of the agencies. In a broad sense, it is the civil counterpart of the deference which a reviewing court must pay to a trial court's criminal sentence. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

■ However, the lack of success does not *per se* indicate that the power to do so is lacking. The supreme court in DuFrenne commented without criticism on the fact that several appellate courts had reduced administrative penalties. (85 Ill. 2d 547, 426 N.E.2d 885.) The court then went on to say, "We therefore hold that the agency's decision as to cause [for discharge] will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of the service. [Citation.]" (85 Ill. 2d 547, 552, 426 N.E.2d 885, 887.) The corollary to this proposition must then be true: that if the agency's decision is arbitrary, unreasonable and unrelated to the requirements of the service, it may be reversed. It would then follow that the original action of the agency head, in this case the Secretary, would be reinstated.

Otherwise, the case would become a ping-pong match between a commission and a court. Kunz' argument that a court is without power to order a discharge is nonmeritorious. The fact that it must be exercised sparingly and with great caution does not mean that it does not exist.

The Secretary has presented a variety of arguments as to why discharge is the proper penalty and that the decision of the Commission is arbitrary, unreasonable, and unrelated to the requirements of his service. He points to prior authorities holding that sleeping on the job is a ground for discharge. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126; *Blankenship v. Civil Service Com.* (1977), 52 Ill. App. 3d 173, 367 N.E.2d 178.) He also argues that the Commission's treatment of this charge was anomalous. At the first hearing the hearing officer recommended discharge based on all three charges, but the Commission reduced it to suspension. At the second hearing the hearing officer apparently based his recommendation on only one of the charges, *viz.,* disclosure of the test, and then recommended suspension. The Secretary maintains that it is manifestly arbitrary and unreasonable for the Commission to order suspension for disclosure without considering the other charges.

As to this disclosure charge, the Secretary also points to prior authority (*Odell v. Village of Hoffman Estates* (1982), 110 Ill. App. 3d 974, 443 N.E.2d 247) holding that disclosure of confidential information is a ground for discharge.

Next, the Secretary argues that the charges in the aggregate merit discharge. He again points out that apparently only the disclosure matter was considered at the second hearing and therefore the other two, sleeping on the job and taking unauthorized time off, remain standing as proved.

■ We agree that sleeping on the job and disclosure of confidential information are serious charges and would merit discharge in the first instance. That is exactly what happened in *Petraitis, Blankenship,* and *Odell*—the administrative agency ordered discharge and this was ultimately affirmed on review. We face an entirely opposite situation—the agency has rejected discharge and ordered suspension. Under DuFrenne we cannot review the matter *de novo* and substitute our own judgment. Our duty is to weigh the Commission's decision and to determine whether it is arbitrary, unreasonable, and unrelated to the requirements of the service. We cannot say that it is such.

For all of the marching and countermarching on the subject of disclosure of the test, the fact remains that the hearing officer, as af-

firmed by the Commission, found it to be negligent rather than dishonest. Sleeping on the job is a serious offense, but circumstances are significant. *Petraitis* involved a police officer sleeping in his squad car while on duty; *Blankenship* involved youth supervisors in the Department of Corrections; such situations are obviously much more fraught with danger than sleeping in a drivers' facility in Aledo, which does not appear in the record to be a beehive of activity.

As to the aggregation of charges, the Commission expressly stated, "[T]he *charges proved* warrant only a 75-day suspension of the respondent, Jacob M. Kunz, from his position with the Secretary of State, State of Illinois." (Emphasis added.) By its use of the plural we conclude that the Commission did consider all three of the charges.

Our review of the record has persuaded us that the Commission's order is not arbitrary, unreasonable, and unrelated to the requirements of the service, and it is accordingly affirmed.

Affirmed.

TRAPP, J., concurs.

JUSTICE MILLS, dissenting:
As the majority clearly points out, Kunz "does not contest the findings of fact nor that the charges against him were proved."

Not only did he sack out on the job and use work time for personal business, but he disclosed a confidential test to someone who was to later take it! Surely, such breach of conduct by one in a *supervisory capacity* is indisputable cause for discharge. In fact, palpable grounds—in aces, spades, and trumps.

The Secretary of State, or any other State agency charged with statutory duties and service to the taxpayers, should be able to rid the public trough of freeloaders who demonstrate such patently unacceptable calibre.

I do not read DuFrenne as narrowly as do my brothers. Their interpretation of the supreme court's standard in that case equates it to a straitjacket. Their reading is so restrictive that under virtually no circumstance could a reviewing court overturn a commission's decision. That cannot be.

To my view, the 75-day suspension as a punishment in this case is both a farce and ludicrous. Such action is indeed "arbitrary, unreasonable, and unrelated to the requirements of the service" and should be reversed.

I dissent.