MARTIN EPSTEIN, Plaintiff-Appellee, *v.* THE CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 61439

Opinion filed March 22, 1977.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellants.

Stephen B. Rubin and Joel A. D'Alba, both of Chicago (Asher, Greenfield, Goodstein, Pavalon and Segall, Ltd., of counsel), for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Defendants (hereinafter Commission) appeal the reversal by the trial court of its order, after a full hearing, discharging the plaintiff as Psychologist III at Kankakee State Hospital. Plaintiff cross-appealed the

trial court's refusal to admit into evidence information relative to the untimely issuance of the Commission's decision.

Plaintiff has been a State employee for at least 10 years. At the time of his discharge in 1973, he was assigned to the mental retardation program at Kankakee State Hospital. His principal duty was to conduct tests to measure and evaluate the measured and adaptive intelligence of profoundly retarded adults.

Psychologists at the hospital were required to regularly attend three separate types of meetings. Weekly resident staff meetings were to be attended by every professional at the hospital. These meetings were held weekly and dealt with information and policies of general interest to all staff at the hospital. Weekly program planning meetings were interdisciplinary discussions among the staff workers of the hospital. At these meetings, the needs of patients (referred to as residents because they were not physically or mentally ill) would be discussed and treatment programs designed. Epstein, assigned to two units in the spring and summer of 1973, was expected to attend two such program planning meetings weekly. Finally, all psychologists were expected to attend monthly psychologists' meetings.

In May 1973, plaintiff discontinued his attendance at all of the above-mentioned regularly scheduled meetings. He did so for two reasons. First, he objected to inquiries made at these meetings by nonpsychologists relating to the raw numerical scores in IQ tests of residents at the hospital. He felt that to reveal these scores in an "open" staff meeting would be to breach his professional ethics as a psychologist. Parenthetically, it should be noted that none of the other psychologists or medical doctors who testified at the administrative hearing felt that such disclosure to staff members—nonpsychologists and even nondoctors—would be an unethical breach of confidentiality.

Secondly, plaintiff believed that as a professional psychologist, he could autonomously plan his work schedule. Since he had a very large case load, often requiring him to work 60 hours a week in his testing program, he concluded that three weekly meetings and a fourth monthly meeting unduly interfered with his higher priority testing functions. In lieu of his attendance plaintiff sometimes submitted written reports on the residents under discussion at the program planning meetings. This procedure was acceptable to Dr. Hasbarger, who had been plaintiff's intermediate supervisor. However, it was not acceptable to Mr. Ira Collins, Dr. Hasbarger's replacement.

Plaintiff's supervisors, Dr. Kozlowski, Mr. Collins and Dr. Misevic (ascending on the chain of command), soon advised him that, notwithstanding his time constraints and ethical beliefs, his attendance at

meetings and full participation was required. Plaintiff admittedly failed to attend. Dr. Kozlowski, plaintiff's immediate superior, first had a letter of reprimand issued under the signature of Dr. Misevic. Plaintiff still failed to attend the staff meetings. Dr. Kozlowski and Mr. Collins conferred on this matter. Ultimately, Collins recommended that plaintiff be suspended for 30 days pending discharge proceedings.

Thereafter, plaintiff sought an administrative hearing on his discharge before the Commission. After a full hearing, the hearing examiner recommended that the discharge be sustained. The Commission unanimously adopted the hearing examiner's recommendation. Plaintiff filed an action in the circuit court of Cook County for administrative review. The circuit court reversed the discharge.

On appeal, the Commission contends that the trial court erred in reversing its decision since the discharge decision was not against the manifest weight of the evidence. It also argues that the trial court improperly considered the magnitude of the penalty imposed against plaintiff in reversing and erroneously reversed when it admittedly did not read the record of proceedings before the administrative body.

On cross-appeal, plaintiff contends that the trial court erred in denying plaintiff the opportunity to introduce evidence that the Commission failed to reach its conclusion within 60 days of its receipt of the transcript of the administrative hearing as required by section 11 of the Personnel Code (Ill. Rev. Stat. 1973, ch. 127, par. 63b111).

I.

■■ The initial question presented for review is whether the trial court erred in its review of the findings and order of the Commission. Judicial review of decisions made by administrative agencies is governed by the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, pars. 264-279). Notwithstanding the apparent broad powers of the circuit court on administrative review granted by section 12 of the Act, the scope of review in such proceedings is severely limited. The evidence adduced at the administrative level along with the agency's findings of fact on that evidence are prima facie true and correct. (*Adamek v. Civil Service Com.* (1st Dist. 1958), 17 Ill. App. 2d 11, 16-17, 149 N.E.2d 466.) It is well established and conceded by plaintiff that findings of the administrative agency can be set aside on review only if against the manifest weight of the evidence. *Kelly v. Police Board* (1st Dist. 1975), 25 Ill. App. 3d 559, 564, 323 N.E.2d 624; *Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478.

Plaintiff contends that the trial court correctly ruled that the manifest weight of the evidence did not sustain any disciplinary measures against

him. To reach the conclusion that a particular finding is against the manifest weight of the evidence, the opposite conclusion must be clearly evident. See *Kelly v. Police Board* and the cases therein cited.

■■ Here, the administrative body found that plaintiff failed to attend staff meetings in contravention of orders by his superiors to do so. While this finding was not held to constitute a failure to perform his professional duties, the Commission held that this conduct was insubordination and grounds for discharge. Plaintiff admits here, and admitted before the · Commission that he failed to attend the staff meetings. While plaintiff may have in good faith believed that his reasons for declining to attend required staff meetings were valid, he nonetheless failed to abide by the policies and directives of his superiors. Notwithstanding plaintiff's professional status, the civil service could not effectively function if all civil service professionals asserted the right to set their own work priorities in contravention of the directives of their superiors. The Commission's finding that plaintiff had been insubordinate was not contrary to the manifest weight of the evidence. Therefore, the circuit court's ruling must be reversed.

Plaintiff has argued that the manifest weight of the evidence does not support any discipline at all. We take this to mean that plaintiff argues that his failure to attend meetings did not violate any terms of his employment. We have already held that the trial court's holding in this regard was contrary to the manifest weight of the evidence. Furthermore, the severity of the sanction imposed for plaintiff's misconduct should not have been considered by the circuit court in determining whether the findings of the Commission were contrary to the manifest weight of the evidence. *E.g., Nolting v. Civil Service Com.* (1st Dist. 1955), 7 Ill. App. 2d 147, 129 N.E.2d 236.

We note two recent cases of this court which held that the findings of an administrative board were not sufficiently substantial to warrant imposition of the maximum penalty of discharge. *Fornuto v. Police Board* (1st Dist. 1976), 38 Ill. App. 3d 950, 349 N.E.2d 521, *appeal denied*, (1976), 63 Ill. 2d 556; *Kreiser v. Police Board* (1st Dist. 1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *appeal allowed*, (1976), 64 Ill. 2d 596.

Fornuto, a city of Chicago police officer, was discharged by the police board after a hearing and a finding by the board that he had violated departmental rules. The circuit court reversed the board's findings and this court affirmed.

Kreiser, also a city of Chicago police officer, was discharged by the police board after a hearing and a finding by the board that he had violated departmental rules. The circuit court affirmed the police board's action. This court held that the conduct, as unsatisfactory as it may be, is not sufficient to require a discharge.

In both cases this court held the police boards' findings were not sufficient "cause" to warrant a discharge. "Cause" was held to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service.

██ In *Nolting*, this court warned—in cases of this type—against the court assuming the function of super-commission or super chief of police. (*Nolting*, 7 Ill. App. 2d 147, 162-63.) We think the warning in *Nolting* to be singularly applicable in a case of this type. Here, plaintiff, a professional person, as the result of his own beliefs, elected to disregard the orders of his superiors. We believe the Commission—rather than the judiciary—is better able to determine the effect that conduct will have on the proper operation of the hospital. Satisfied that plaintiff had a fair and proper hearing, and satisfied that the findings of the Commission are not against the manifest weight of the evidence, we think the trial court was in error to reverse the findings of the Commission on account of the severity of its action.

## II.

We next turn to the questions presented by plaintiff's cross-appeal. Here, the principal contention is that the Commission failed to make its final determination within 60 days of its receipt of the transcript of administrative proceedings as required by section 71 of the Personnel Code (Ill. Rev. Stat. 1973, ch. 127, par. 63b111). If this is so, then plaintiff claims that he is entitled to a writ of mandamus to order the Commission to reinstate him with back pay. The resolution of this issue turns on our conclusion of what constitutes receipt of the transcript by the Commission.

From our review of the record, it appears that the typical procedure in Commission proceedings is for the Attorney General's office to represent the agency for which the employee sought to be discharged was working. A court reporter is present at the Commission hearing and prepares a transcript. This transcript is procured by the Attorney General. The Attorney General then transmits the transcript to the Commission.

In the instant case, the transcript was stamped received by the Commission 58 days prior to the date of its decision. Plaintiff contends that the Commission constructively received the transcript of the proceedings as of the date that the Attorney General procured the transcript from the reporting service. He argues that the Attorney General is the attorney for all state agencies, including the Commission. However, in this case, the Attorney General was representing the Department of Mental Health, plaintiff's employer, in an advocacy relationship. The Commission was acting as a quasijudicial body. (*People ex rel. Hurley v.*

*Graber* (1950), 405 Ill. 331, 90 N.E. 2d 763.) In point of fact, the Commission was in no position to consider the merits of the case, from the transcript, until it *actually* received it.

■■ While we agree that the 60-day period granted for consideration of the transcript is mandatory (*cf. Stevens v. Department of Law Enforcement* (1st Dist. 1974), 19 Ill. App. 3d 24, 311 N.E.2d 312), we nonetheless hold that the period does not begin to run until the transcript is actually received by the Commission. Hence, even considering the merits of plaintiff's cross-appeal (the Commission's motion to dismiss the cross-appeal having been taken with the case), plaintiff is not entitled to any relief. Plaintiff's cross-appeal is without merit.

The record here reveals that plaintiff had been a long-term public servant and had done superior work. It is regrettable that plaintiff and his superiors could not have resolved this matter amicably. Nevertheless, we are bound to review cases according to the law. Here, we are compelled to reverse the circuit court and reinstate the finding and order of the Commission.

Circuit court judgment reversed: Civil Service Commission order affirmed.

STAMOS and PERLIN*, JJ., concur.

---

* At the time of oral argument of this case Justice John C. Hayes sat with Justices Downing and Stamos. Subsequently Justice Hayes died. Since that time Justice Perlin was designated the third member of the panel and has listened to the tape of the oral argument, has read the brief and excerpts from the record.