AUGUSTA WELLS, Plaintiff-Appellant, *v.* HEALTH AND HOSPITALS GOVERNING COMMISSION OF COOK COUNTY, Defendant-Appellee.

First District (3rd Division) No. 76-456

Opinion filed August 17, 1977.

Jacob Bloom, of Chicago, for appellant.

Vedder, Price, Kaufman & Kammholz, of Chicago (John A. Relias, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County denying the plaintiff's petition for the issuance of a common law writ of certiorari to review and reverse the action of the Health and Hospitals Governing Commission of Cook County ("the Commission") discharging the plaintiff from his position as a lieutenant in the Security Department of Cook County Hospital. The plaintiff questions whether the notice requirements of the Commission's rules and regulations regarding employee disciplinary procedures were met; whether the charges upon which plaintiff's dismissal was based were within the causes for discharge as set out in the aforesaid rules and regulations; and whether such charges were supported by the evidence.

Plaintiff Augusta Wells was first employed as a security officer at Cook County Hospital on March 18, 1968. He was subsequently promoted to the position of lieutenant in 1972, and acted in a supervisory capacity in his role as a security officer.

On September 22, 1973, Melvin R. May, director of security for the Commission, suspended Wells from his duties as Security Supervisor. The oral suspension was confirmed by May's letter of September 24, 1973, in which Wells was informed that September 26, 1973, at 10 a.m., had been set for a hearing regarding Wells' "alleged misappropriation of funds from parking lot #5."

At that hearing, Wells was represented by an attorney before Victor Jackson of Cook County Hospital's Labor Relations Division. As a result of this "Predisciplinary Hearing," Jackson, on September 28, 1973, notified Wells that written charges had been filed against him, resulting in

his termination. Specifically, the charges were "misuse of Hospital's funds and failure to follow instructions." Notice of the time and date of a disciplinary hearing came later in a letter dated October 16, 1973. The hearing had been set for October 18 at 2 p.m., but at that time was continued to October 30, 1973. The plaintiff was advised of the new hearing date by a letter dated October 23, 1973.

On October 30, 1973, the disciplinary hearing was conducted before hearing examiner James Brawley, a duly authorized merit system hearing officer. The charges of misuse of hospital funds and failure to follow instructions were reiterated, with specific reference made to the hospital's "Personnel Policies and Procedures Manual" which provides in part that no employee shall:

> "Steal or remove or be in unauthorized possession of hospital or another person's personal property.
> * * *
> Fail to follow instructions, or to work in accordance with hospital policies and procedures."

The plaintiff's attorney stated that he did not think the charges were specific or definite enough. However, he made no procedural objection, stating that "if [the charges] are limited to matters that were previously discussed with me or in my presence prior to this date by the Hospital Personnel Authorities, then I register no objection to the same."

The testimony and evidence presented at the hearing related to an alleged misappropriation of money from one of the hospital's paid parking lots. Benjamin Isom, assistant director of security at Cook County Hospital, testified that the usual procedure for entry into hospital parking lots was to insert the correct amount of change into a sealed collection box, thereby raising the gate. Periodically, someone from the hospital's accounting office would collect the money from the boxes. When the collection boxes were not functioning properly, the Pinkerton guard on duty would collect the money and operate the gate by use of a key card.

Isom testified that on August 10, 1973, a Commission security officer gave him an envelope containing $6.50, which had been received from a Pinkerton guard assigned to parking lot #5. Isom initiated a full scale investigation to determine to what extent other security personnel had been collecting money from parking lot collection boxes or from the guards on duty. During the course of this investigation, Isom spoke with Samuel Matthews, a Pinkerton guard assigned to parking lot #5, who told Isom he had given money he had collected from the coin boxes to Wells two or three times a week for eight months to a year. The amounts varied from $6 to $30.

Isom spoke with Wells on August 15, 1973, regarding the parking lot

monies. Wells stated he had received money from Matthews only twice, and had given that money to the hospital's accounting office. The only receipt Wells produced from the accounting office was dated August 15, 1973, in the amount of $24.75. Wells admitted that he had been given this money by Matthews on July 30 and August 3, 1973. Wells had apparently been informally questioned regarding parking lot collections the day before he was questioned by Isom. Hospital accounting office records indicated that in the 16-month period between April 15, 1972, and August 14, 1973, Wells had not turned in any money collected from the parking lot.

Two written statements by Wells were made part of the hearing record. In one, Wells stated he had received $12 from Matthews in April or May 1973, had turned the money over to the hospital's security office and was given a receipt by a Miss Brown, to the best of his recollection. He also referred to the $24.75 he had received on July 30 and August 3, 1973, and turned in on August 15. In the other statement, Wells admitted that there was a possibility that he had mishandled $50 of the Commission's money and that he would be willing to pay it back.

Matthews, the Pinkerton guard assigned to parking lot #5, testified that whenever the collection box was broken, he had turned the money he collected over to Wells. The accounting office's Thelma Brown testified that she had not received any money from Wells in April or May, 1973. John Travis, another security officer, testified that during the investigation he had interviewed both Matthews and Wells; that Matthews had told him that he had been giving Wells money from parking lot #5 for "a long time"; Wells told him he had been collecting money from Matthews but could not produce any receipts from the accounting office.

Wells testified in his own behalf. He stated that during late July, August and September, 1972, he was working two shifts, and that during that time, since he had no time to turn the money in, he put the money collected from parking lot #5 in his pocket and "may have spent some of the money." Referring to his written statement that he might have mishandled $50 which he was willing to pay out of his pocket, Wells explained that after taking a number of polygraph examinations, the examiner told him that while the polygraph machine was not exact, the money he had probably mishandled was no more than about $50. Wells told the examiner that he did not remember mishandling $50, but if it was at all possible that he had, then he was willing to pay it back. Wells stated that he was asked to submit this in writing to Mr. May, the director of security, which he did, since he did not feel he would be terminated for it.

At the conclusion of all testimony, the hearing examiner sustained the charge of misuse of hospital funds, but found that the charge of failure to follow instructions was not substantiated by the evidence.

The plaintiff first contends that the notice requirements of the Commission's rules and regulations regarding employee disciplinary procedures were not complied with, and therefore the Commission did not acquire jurisdiction to hold a hearing. The Commission was created by the County Hospitals Governing Commission Act (Ill. Rev. Stat. 1975, ch. 34, par. 5011 *et seq.*). Section 16 of that Act provides in part:

"* * * The Commission shall adopt rules and regulations based on such principles governing the appointment, training, promotion, transfers, lay-off, removal, discipline, fringe benefits and welfare of its employees." Ill. Rev. Stat. 1975, ch. 34, par. 5026.

Pursuant to such authority, the Commission adopted two sets of rules and regulations. The rules acknowledged by counsel for the plaintiff at oral argument to be pertinent in the case at bar are the Merit System Rules and Regulations, adopted by the Commission in October 1970 and amended in April 1971. Section V of the Merit System Rules and Regulations, under the heading "Pre-Disciplinary Hearing" provides, in part:

"* * * The department head or his designee may temporarily suspend the employee or relieve him from active duty, pending investigation of conduct which may lead to discharge, demotion or suspension of more than 30 calendar days. If an employee is so suspended or relieved from active duty, a predisciplinary hearing shall be conducted within seven calendar days from the date the employee is suspended or relieved from active duty.

"The employee will be given written notice of the time and place of any such hearing, and have present a representative of his own choosing. Prior to such pre-disciplinary hearing, the employee will be given a written statement of the circumstances generally giving rise to the potential disciplinary action. Such statement shall inform the employee of the time, date and place of any relevant incidents, the names of any participants or witnesses thereto and a statement of the conduct on which disciplinary action may be based. At the hearing the employee will be given an opportunity to respond orally or in writing to the matters raised in the written statement."

The plaintiff contends that although the letter of September 24, 1973, satisfied the requirement of written notice of the time and place of a hearing, there was no compliance with the provision requiring a written statement of the circumstances giving rise to the disciplinary actions, including the time, date and place of relevant incidents, witnesses, and the conduct upon which the disciplinary action is based. Because of this defect, the plaintiff argues that the Commission failed to acquire

jurisdiction to conduct the predisciplinary hearing, and therefore actions taken pursuant to that hearing resulting in the plaintiff's termination are void. Even assuming that the Commission did acquire jurisdiction to conduct the predisciplinary hearing, the further jurisdictional requirements of section V of the Merit System Rules and Regulations were not met. Section V further provides:

> "If a career employee thereafter is discharged, demoted or suspended for more than 30 calendar days, written charges shall be served on the employee within five calendar days after the date of the predisciplinary hearing. The charges shall contain a statement of the time, date and place of any relevant incidents, the names of any participants or witnesses thereto, a statement of the conduct on which the disciplinary action is based, and a statement of the action being taken against the employee. At the same time such written charges are served upon the employee, he shall be notified of a date at which a disciplinary hearing will be commenced within 30 calendar days. The written charges and notice of hearing shall be served in person or by registered or certified mail."

Plaintiff states that the Commission did not serve written charges upon him within five calendar days of the predisciplinary hearing. Nor were the specifications as to the contents of the written charges met. Because of these deficiencies, the plaintiff contends that the Commission acquired no jurisdiction to proceed with either the predisciplinary or disciplinary hearing and therefore the discharge of the plaintiff is void and illegal.

However, upon an examination of the record before us, we find the plaintiff's reliance on these alleged procedural errors misplaced. The Commission's letter of September 28, 1973, satisfies the requirement of formal notice of written charges within five days of the predisciplinary hearing, which was held September 26, 1973. The fact that, in commenting on the plaintiff's objection to the admission of this letter into evidence at the disciplinary hearing of October 30, 1973, the hearing examiner commented, "As I understand this letter, it is a formal notice of the termination of Lieutenant Wells' services," does not negate the fact that it informed the plaintiff of the written charges against him, and while there was no statement as to the time, date and place of the relevant incident or names of witnesses thereto, these procedural defects do not require a reversal of the action of the Commission for two reasons.

First, plaintiff waived these errors by failing to object below and by actively participating in the hearings before the Commission. In *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 324 N.E.2d 65, the plaintiffs sought to overturn a decision of the Evanston Fair Housing Review Board because the complaint filed by the Evanston

Human Relations Commission was not served upon the plaintiffs within the period required by Evanston ordinance. Upon review, the court held that the plaintiffs had waived any possible irregularity:

"The complaint was mailed to plaintiffs on June 5, 1972. However, plaintiffs (sic) motion to dismiss the complaint based on this irregularity was not received by the Board until October 27, 1972, and was not argued and decided until November 2, 1972. In the interval, plaintiffs not only filed an answer to the complaint, but over a 5-month period participated in efforts to conciliate the complaint. The answer did not in any respect challenge the late service of the complaint, nor was this defect raised during the conciliation efforts. It thus appears that plaintiffs not only delayed over 4 months in complaining of the alleged defect but that they actively participated in the prior litigation of the complaint. We conclude that plaintiffs' delay coupled with their participation in the case constituted a waiver of any possible defect in service of the complaint. See *Lovell v. Hastings*, 11 Ill. App. 3d 221, 296 N.E.2d 608; *Pocahontas Mining Co. v. Industrial Com.*, 301 Ill. 462, 134 N.E. 160." *Quinlan & Tyson, Inc.*, at 888.

■■ In the case at bar, the plaintiff's attorney specifically stated at the disciplinary hearing that while he did not think the charges of misuse of hospital funds and failure to follow instructions were specific or definite enough, "[i]f they are limited to matters that were previously discussed with me or in my presence prior to this date by the Hospital Personnel Authorities, then I register no objection to the same." Similarly, no objections were made regarding any defects of notice. Yet plaintiff, represented by counsel, actively participated in all proceedings leading to his dismissal. We conclude that the plaintiff's failure to raise timely objections to these defects and his active participation in the hearings constituted a waiver of any possible error.

Similarly, the plaintiff's objection to the charges upon which his dismissal was based, was negated by his participation in the proceedings below. As stated previously, while counsel for the plaintiff stated that he thought the charges of misuse of hospital funds and failure to follow instructions were not specific enough or definite enough, he registered no objection to the same, apparently because he had been apprised of their meaning more specifically in prior discussions with Commission personnel.

■■ Illinois courts, in discussing the question of the right of a plaintiff to proper notice and a sufficient and explicit statement of charges against him, have stated that such charges need not be drawn with "the refinements, niceties, and subtleties of pleadings in courts of record."

(*Tarr v. Hallihan* (1940), 375 Ill. 38, 42, 30 N.E.2d 421; *Kalman v. Walsh* (1934), 355 Ill. 341, 346, 189 N.E. 315.)

"It is sufficient that the practitioner be fairly and reasonably apprised of the acts of misconduct with which he is charged so that he may properly prepare to defend such charges." (*Tarr*, at 42. See also *Kelly v. Police Board of Chicago* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624; *Guzell v. Civil Service Com.* (1974), 17 Ill. App. 3d 266, 308 N.E.2d 351.)

In the instant case, the plaintiff was notified that the charges against him were the "alleged misappropriation of funds from parking lot #5," and "misuse of Hospital's funds." They were discussed with the plaintiff and his attorney prior to the disciplinary hearing. The plaintiff was also aware of the witnesses to be called at the hearing. Plaintiff's full participation in the proceedings evidence his ability to properly prepare a defense and that the charges were sufficient to reasonably inform him of the acts of misconduct of which he was accused.,

 Even if the plaintiff had properly preserved the question of the adequacy of the Commission's compliance with its procedural requirements for review, the courts have held that where an agency fails to comply with its own procedural rules but operates within the limitations set forth by the legislature, and the complainant suffers no great prejudice by such noncompliance, then the agency does not lose its jurisdiction. (See *e.g., Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 397, 342 N.E.2d 298; *Brewton v. Civil Service Com.* (1969), 115 Ill. App. 2d 460, 253 N.E.2d 504.) Here, the Commission's enabling legislation simply provided that:

"\* \* \* No merit or career employee may be discharged, demoted or suspended for a period of more than 30 days, except for cause and upon written charges. Such employee shall have an opportunity to be heard in his own defense. Such charges shall be heard by or before the Cook County Hospitals Governing Commission, or by or before some officer or board appointed by the Commission to conduct the hearing. Such hearing shall be commenced within 30 days of the filing of the charges. \* \* \*" (Ill. Rev. Stat. 1975, ch. 34, par. 5026.)

There has been no allegation that the Commission violated its statutory mandates. The plaintiff's full participation in the hearings without raising any objection as to notice or the time the hearing commenced, compel the conclusion that the Commission did not lose jurisdiction because of deficiencies of notice, and that a reversal of its decision is unwarranted. *Parsons v. Civil Service Com.* (1977), 50 Ill. App. 3d 519; 365 N.E.2d 544, recently decided by this court is not applicable because there the

employee notified the hearing officer on several occasions of his objection to the delay in the commencement of the proceedings.

■■ The plaintiff next argues that since the charge "misuse of Hospital's funds" is not contained in the code of conduct, which only states that employees shall not: "Steal or remove or be in unauthorized possession of hospital or another person's personal property," his discharge on the basis of such charge was a violation of his due process rights. The plaintiff also claims that even if the charge had been included in the code of conduct, it would be unconstitutional and void for vagueness. We find these claims to be unfounded. The plaintiff was notified that his conduct was allegedly in violation of code of conduct Rule 6, relating to theft of hospital property, and counsel for the plaintiff stated that such charges had been discussed with him and he registered no objection to them. It is apparent that the plaintiff was reasonably informed of the acts of misconduct of which he was accused. In view of our previous disposition of the question of the adequacy of notice and specificity of the charges, we find further discussion of the cases cited by the plaintiff unwarranted.

■■ The plaintiff's final contention is that the finding of the Commission was against the manifest weight of the evidence. It is well settled that the proper standard for judicial review of administrative decisions by common law certiorari is whether the record fairly supports the administrative agency's findings. (*Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412, 305 N.E.2d 404; *Nolting v. Civil Service Com.* (1955), 7 Ill. App. 2d 147, 129 N.E.2d 236; *People ex rel. Fosse v. Allman* (1946), 329 Ill. App. 296, 68 N.E.2d 203.) The court in *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 884, 324 N.E.2d 65, summarized the scope of review on certiorari:

> "The only province of the trial court is to consider the record and ascertain whether the agency had jurisdiction, whether it exceeded its jurisdiction, whether it proceeded according to law and acted on evidence, and whether there is anything in the record which fairly tends to sustain the action of the agency. Where the agency is not arbitrary in its findings and there is evidence in the record of its proceedings which fairly tends to support the finding, a reviewing court is not justified in substituting its judgment for the discretion and judgment of the agency. (*Prendergast v. Retirement Board*, 325 Ill. App. 638, 60 N.E.2d 768.)"

In the case at bar, there was sufficient evidence to support the decision of the hearing examiner. There was testimony that from March 1972 to August 1973 the plaintiff had been receiving money which the Pinkerton guards had collected from parking lot #5 in amounts varying from $6 to $30. Yet there were no records of this money having been turned in to the

hospital accounting office, nor could the plaintiff produce any receipts. The plaintiff's own testimony was to the effect that he had put money collected from parking lot #5 into his own pocket during late July, August and September, 1972, and that he may have spent some of that money. In a written statement, he admitted there was a possibility that he had mishandled $50 of the Commission's money and that he would be willing to pay it back. He testified that he had collected money on July 30 and August 3, 1973, but did not turn it in until August 15, 1973. There was further testimony that this was one day after the plaintiff had been informed that an investigation concerning the collection of parking lot money was in progress.

■■ A finding that the decision of an administrative body is against the manifest weight of the evidence requires that an opposite conclusion is clearly evident. (*Schwarze v. Board of Fire & Police Commissioners* (1964), 46 Ill. App. 2d 64, 68, 196 N.E.2d 724; *Rude v. Seibert* (1959), 22 Ill. App. 2d 477, 483, 161 N.E.2d 39.) The mere existence of conflicting testimony is not a sufficient basis for reversing an administrative agency's decision as being against the manifest weight of the evidence. (*Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 401, 342 N.E.2d 298; *Ceja v. State Police Merit Board* (1973), 12 Ill. App. 3d 52, 58, 298 N.E.2d 378; *Schwarze v. Board of Fire & Police Commissioners* (1964), 46 Ill. App. 2d 64, 68, 196 N.E.2d 724.) We do not find such a clear lack of substantial evidence here. The statement of the hearing examiner that certain evidence as to the misuse of funds was "conflicting and vague" does not negate the fact that the the hearing examiner found other substantial evidence to support that charge with regard to other funds received by the plaintiff. Nor does the vagueness of testimony regarding established procedures for handling money by security officers justify a conclusion that the findings of the Commission were contrary to the manifest weight of the evidence.

Accordingly, the order of the circuit court of Cook County denying the plaintiff's petition for the issuance of a writ of certiorari is affirmed.

Affirmed.

SIMON, P. J., and McGILLICUDDY, J., concur.