ROOSEVELT ALEXANDER, Plaintiff-Appellant, *v.* CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (1st Division) No. 78-1568

Opinion filed August 13, 1979.

508

Thomas J. Murphy, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from the circuit court of Cook County brought pursuant to the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 276). The trial court affirmed the discharge of the plaintiff, Roosevelt Alexander, by the defendant, Civil Service Commission, from his position as technical advisor with the Illinois Liquor Control Commission (hereinafter Commission). We affirm.

The plaintiff contends that there were insufficient grounds for his discharge, that he was not discharged in accordance with certain procedural guarantees, and that the doctrine of equitable estoppel warrants his reinstatement.

The plaintiff worked for the Illinois Liquor Control Commission from November 1973 thru August 1977 as a technical advisor. This position involved the investigation, preparation, and prosecution of liquor regulation violations and the preparation of memorandum opinions for the commission. During his employment with the commission, Alexander worked out of his office in Evanston, coming into the Chicago office of the commission only several times a month. This schedule was approved by his former director, Thomas J. Murphy, and it was stipulated by the commission that this schedule reflected a longstanding practice at the commission that technical advisers, although full-time employees, did not maintain full-time schedules. This practice, however, was not sanctioned by Jack Wallenda when he became the new executive director of the commission in 1977, and Alexander was ultimately discharged. The formal charges prepared by the Illinois Liquor Control Commission stated that Alexander was discharged for due cause for "failure to report to work as directed and being absent without authorization for five days." The commission stipulated that plaintiff's discharge was not based on his performance with the commission.

Subsequent to his discharge the plaintiff sought a hearing on these charges with the Civil Service Commission. At that hearing the following evidence was received concerning the facts giving rise to the plaintiff's discharge. Jack Wallenda, the executive director of the Illinois Liquor Control Commission, testified that shortly after he became executive director on June 16, 1977, he realized that a problem existed at the commission. The problem arose from the fact that no one was available to answer the variety of legal inquiries made by individual attorneys, village attorneys, and various members of the liquor industry because the only attorney on the staff, the plaintiff, was only present on the premises a few times a month. It was Wallenda's belief at this time that Alexander was a part-time employee. In order to clarify the nature of the plaintiff's part-time work status, Wallenda spoke to Timothy Roesler of the Department of Personnel in Springfield. Mr. Roesler informed Wallenda that personnel records revealed that Alexander was a full-time employee receiving full-time pay. According to Wallenda's testimony, after receiving this information, he met with the plaintiff on August 3, 1977, and told him that because of the number of inquiries made of the commission each day, in the future it would be necessary for him to report to the office from 8:30 to 5, five days a week. A letter confirming this conversation was sent that same day. On August 15, 1977, Wallenda, not having

heard from the plaintiff, telephoned Alexander and again instructed him to report to work on a regular work schedule. He informed Alexander that under Personnel Rule 3—350, the failure to report for work for five consecutive days constituted cause for discharge. Again a letter was sent to confirm their conversation. The plaintiff, according to Wallenda, did not report to work on August 16, 17, 18, 19, and 22, 1977, and was subsequently discharged. Wallenda also testified that, because he was not an attorney, he could not answer legal inquiries and that it was often impossible to reach Alexander by phone at his law office when he needed him. On cross-examination Wallenda admitted that he was not aware of the history of the past technical advisors' work schedules.

Ex-executive director Murphy testified that during his employment with the commission, it had been the custom to have technical advisors work part time from their homes of offices although receiving full-time pay. Murphy testified that he was sure that he informed the Personnel Department of this practice and that the practice did not hamper the effectiveness of the commission. Rather, according to Murphy, it merely reflected the fact that as professionals, the attorney-technical advisors were able to complete their assigned work, at their own pace, without having to be present at the commission office. He further testified that Alexander's work would have taken him approximately eight hours a week. He also testified that while he was executive director, and an attorney, he answered most phone inquiries.

Timothy Roesler testified that he provides personnel services to 35-40 agencies, boards and commissions, including the Illinois Liquor Control Commission. He further testified that full-time employees must work 37½ hours per week under Personnel Rule 3-300 and that the work schedule for the Illinois Liquor Control Commission is 8:30 to 5 five days a week; any changes in the schedule had to be approved by the Department of Personnel. He stated that no such approval had been sought in the present instance to his knowledge. He also stated that the hourly rate for a part-time technical advisor II, like plaintiff, was $20 an hour. In reference to the initiation and filing of the discharge papers, Roesler testified that he prepared the charges, under Wallenda's direction, and then signed them for Wallenda at Wallenda's direction. He testified that the most recent evaluation form in Alexander's personnel file was attached to the formal charges. He also corroborated the content of Mr. Wallenda's August 3, 1977, conversation with Alexander and the fact that Alexander was the only attorney on the staff of the commission.

Alexander testified that in 1974, while he was employed by the commission, he was offered a job as a staff attorney with the Fair Employment Practices Commission (F.E.P.C.) by Stuart Garbutt at a salary of somewhere between $17,000 and $18,000. He stated that the

offer was made in writing. However, he testified that he no longer had a copy of that letter. He decided not to take the job; he further testified, upon the assurance of the then director Murphy, that he could continue to perform his work for the commission out of his law office. Alexander also testified that he and Wallenda discussed the possibility that he be paid on an hourly basis but that Wallenda never made an offer to him to this effect because Alexander told him that he would not work for the $20-an-hour wage that Wallenda told him was available for part-time personnel of his status. Alexander also testified that Wallenda told him not to appear for the August hearing nor to do any additional work for the commission. Alexander testified that based upon this conversation he finished the remainder of the work he had pending but did not report to work in person nor perform any work for the commission after August 15, 1977. However, on cross-examination, he testified that he did receive executive director Wallenda's letters of August 3 and 15 and that the order by Wallenda to report to work daily from 8:30 to 5 given in these letters and in his telephone conversation with Wallenda was never withdrawn.

On January 6, 1978, the hearing officer in his recommendation to the Civil Service Commission stated that the charges against Alexander had been proved and that they warranted his discharge. In reaching this opinion, the hearing officer rejected plaintiff's defenses. Specifically, he states that (1) Wallenda was justified in ending a work practice inconsistent with Department of Personnel rules; (2) the evidence of the Fair Employment Practices Commission offer was too negligible to be attributed any weight; (3) the Department of Personnel's failure to follow its own rules was not shown to be prejudicial; and (4) the plaintiff, given notice that he would be discharged if he did not appear for work, persisted in disregarding that order.

On January 18, 1978, the Civil Service Commission entered an order affirming the hearing officer's finding. This decision was entered 44 days after the commission received the transcript of the hearing but 74 days after the transcript was made available to the parties. The plaintiff sought administrative review (Ill. Rev. Stat. 1975, ch. 110, par. 264 et seq.) of this decision from the circuit court of Cook County. On June 23, 1978, the circuit court affirmed the Civil Service Commission's decision. It is from this order that the present appeal arises.

■■ The appellant's main argument is that the testimony received at the Civil Service Commission hearing did not support the finding that there was just cause to discharge him. Judicial review under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 et seq.) is premised on the theory that findings of an administrative agency are to be taken as prima facie correct on questions of fact. (Ill. Rev. Stat. 1975, ch. 110, par. 274; *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d

782, *cert. denied* (1978), 437 U.S. 911, 57 L. Ed. 2d 1142, 98 S. Ct. 3105.) Therefore, in reviewing the decision of an administrative agency, a court will not substitute its judgment for that of the administrative agency, but rather will determine only whether the administrative agency's findings are against the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713; *Res v. Civil Service Com.* (1977), 49 Ill. App. 3d 852, 365 N.E.2d 209.) In reaching this determination, the court need only consider whether there was competent evidence in the record to support the decision reached by the agency. *May v. Pollution Control Board* (1976), 35 Ill. App. 3d 930, 342 N.E.2d 784.

■■ Illinois law provides for the discharge of an employee who has completed his probation period only upon a finding of just cause. (Ill. Rev. Stat. 1975, ch. 127, par. 63b108b.16.) Just cause exists where there is some act or behavior of the employee or "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which law and public opinion recognizes as good cause for his no longer holding a position." (*Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 497, 367 N.E.2d 778.) These shortcomings need not be related to the performance of work (*Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *cert. denied* (1978), 437 U.S. 911, 57 L. Ed. 2d 1142, 98 S. Ct. 3105 (failure to attend department meetings); *Miller v. Police Board* (1976), 38 Ill. App. 3d 894, 349 N.E.2d 544 (failure to reside within city limits); *Cutright v. Civil Service Com.* (1970), 128 Ill. App. 2d 331, 262 N.E.2d 102 (avoidance of tax due employer). However, they should not be trivial, arbitrary, or unreasonable. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126.) And as the court noted recently in *Hardaway*, courts "should not assume the function of super-commission or super chief of police in determining what constitutes cause." 52 Ill. App. 3d 494, 498; accord, *Epstein v. Civil Service Com.*

The facts in *Epstein* are very similar to those in the instant case. There, a psychologist was discharged because he refused to attend weekly and monthly department meetings. His former supervisor had allowed him to send reports to these meetings on patients that were under discussion in lieu of his attendance. His present supervisor, however, felt his attendance was necessary. The court in sustaining the discharge recognized that there might be a difference of opinion as to the necessity of the plaintiff to attend the meetings and that the doctor might have a good reason for not attending. However, the court concluded that disobeying a superior's order could not be sanctioned. The court explained that "the civil service could not effectively function if all civil

service professionals asserted the right to set their own work priorities in contravention of the directives of their superiors." 47 Ill. App. 3d 81, 84. ■■ Here, the plaintiff possessed a full-time position with the Illinois Liquor Control Commission as a technical advisor which required a 37½ hour work week based on a fixed schedule of 8:30 to 5 five days a week. Admittedly, while under former executive director Murphy, the plaintiff was allowed the freedom to perform his assignments from out of his Evanston law office without being present 37½ hours in the Chicago office. Executive director Wallenda, however, determined that this schedule did not coincide with the best interests of the commission. He, therefore, ordered plaintiff to report to work on a regular work schedule. Despite several conversations with plaintiff, both in person and by phone and several written communications, plaintiff failed to report to work as ordered for five consecutive days. While the plaintiff may have believed that he could work better out of his law office, and that his presence at the commission was not required, this was a decision that was not his to make. His superior determined that his presence was needed on a regular basis for the efficient operation of the commission. We believe that the Civil Service Commission was in a better position to evaluate the validity of this determination than a court. (*Epstein v. Civil Service Com.*) Accordingly, we do not think that its conclusion was clearly wrong or against the manifest weight of the evidence.

The plaintiff next urges that he was not afforded various procedural guarantees during his discharge from the commission because the procedures in Personnel Rule 2—720 were not followed. That rule provides that charges advanced against an employee must be signed by the agency head and a copy of the employee's most recent performance record attached to the charges. Administrative agencies are accorded substantial discretion in construing and applying their own rules. (*Lamar v. Illinois Racing Board* (1977), 55 Ill. App. 3d 640, 370 N.E.2d 1241; *Scheffki v. Board of Fire & Police Commissioners* (1974), 23 Ill. App. 3d 971, 320 N.E.2d 371.) Therefore, an agency's construction of its own rule will be reviewed only if it is clearly erroneous or inconsistent with long settled construction.

■■ The plaintiff does not assert that the commission's present position is inconsistent with its past interpretation of Personnel Rule 2-720's meaning. Nor do we find that the application of the rule was clearly erroneous. The commission should be able to determine its discharge procedures and who may act for the agency during the discharge proceedings. Furthermore, the hearing officer found that the plaintiff was not prejudiced by the commission's disregard of Personnel Rule 2-720. We do not think that his conclusion was against the manifest weight of the evidence. The charges issued by the commission specifically stated that

the discharge was initiated because the plaintiff failed to report to work on a full-time basis for five consecutive days and because Alexander disobeyed an order of his executive director. The commission stipulated that plaintiff's work performance was excellent and in no way contributed to the discharge. Therefore, it is clear that the discharge was not premised in any way on Alexander's performance. As such, he was not prejudiced when his most recent job evaluation form did not accompany the charges because the evaluation had no relevance on whether he should be discharged.

■■ Plaintiff also argues that he was erroneously discharged because the Civil Service Commission's decision was not reached within 60 days after the transcript became available to the parties because the Attorney General's office did not turn over the transcript as soon as it became available but rather retained it 30 days to write its briefs. We do not accept plaintiff's argument. In *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *cert. denied* (1978), 437 U.S. 911, 57 L. Ed. 2d 1142, 98 S. Ct. 3105, the plaintiff raised the argument that the 60 day statutory period in which the Civil Service Commission must render a decision (Ill. Rev. Stat. 1975, ch. 127, par. 63b111), began to toll as soon as the transcripts came into the possession of the Attorney General's office rather than when the commission actually obtained possession of the transcript. The court rejected this argument explaining that the Civil Service Commission was in no position to consider the merits of the case until the transcript was delivered to it and that consequently the 60-day period did not begin to toll until the Civil Service Commission received the transcript.

We find that the *Epstein* case controls the instant case. The Civil Service Commission entered its decision 44 days after its receipt of the transcript. This was clearly within the 60-day statutory period. While the better practice may have been for the Attorney General's office to have submitted the transcript to the Civil Service Commission and then checked it out in order to prepare its brief, the plaintiff has failed to show any prejudice from this course of conduct because during this same period the plaintiff borrowed the transcript from the Attorney General's office in order to prepare his own briefs. Clearly the plaintiff cannot assert prejudice from the fact that the Attorney General's office retained the transcript for 30 days prior to filing it, when he, at least partially, contributed to the 30-day delay.

The plaintiff's final argument is that the doctrine of equitable estoppel should be applied here. The plaintiff argues that he relied upon the commission's past practice of not requiring technical advisors to report to work on a full-time basis and ex-executive director Murphy's assurances when he rejected a more profitable job offer with the Fair

Employment Practices Commission in order to retain his law practice while he worked with the commission. In Illinois,

"The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts." (*Dill v. Widman* (1952), 413 Ill. 448, 455-56; 109 N.E.2d 765; accord, *Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 288 N.E.2d 97.)

It is also well established that the party asserting the estoppel must establish the estoppel by clear, concise, and unequivocal evidence. *Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 368 N.E.2d 702; *Allstate Insurance Co. v. Horn* (1974), 24 Ill. App. 3d 583, 321 N.E.2d 285.

Both parties to this appeal cite a variety of cases pertaining to the application of the doctrine of equitable estoppel to government bodies. We do not think a consideration of these cases is necessary to a determination of the present case because the evidence does not show that all the essential elements of estoppel have been proved. The hearing officer found the evidence concerning the job offer at the Fair Employment Practices Commission to be of negligible value. As this was the plaintiff's only evidence introduced to prove detriment and loss, the plaintiff failed to prove equitable estoppel. We do not think that this finding of the hearing officer was against the manifest weight of the evidence in that there was no documentary proof or testimony of someone other than the plaintiff at the hearing to verify the existence of the offer. Moreover, the plaintiff's reliance upon the past practice of the commission was unreasonable because he could have easily ascertained that his former director did not have the authority to allow him to work in the office on a less than full-time basis by referring to the Liquor Control Act (Ill. Rev. Stat. 1975, ch. 43, par. 101), and Personnel Rule 3—300. (*Levin v. Civil Service Com.*) For these reasons the plaintiff is not entitled to equitable relief by estoppel.

For the foregoing reasons the order of the circuit court of Cook County affirming the order of the Civil Service Commission is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.