ALBERT A. GORANSON *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 78-1182

Opinion filed December 31, 1980.

Donald Hoffman, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff appeals from a circuit court order under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) affirming an administrative agency's finding that he violated the provisions of "An Act to provide for licensing and regulating detectives * * *" (Ill. Rev. Stat. 1975, ch. 38, par. 201—16(f)). On appeal, he contends that (1) the complaint did not meet the requirements of due process; (2) he did not receive a fair and impartial hearing; and (3) the findings of fact do not support the conclusions of law. We affirm. The pertinent facts follow.

On April 26, 1977, the Department of Registration and Education (Department) issued a complaint against Al Goranson, a licensed detective, and Al Goranson and Associates, Inc., a licensed detective agency. The complaint alleged that on September 9, 1975, plaintiff executed a contract with Robert Macur for surveillance in the sum of $27,000. The contract provided for a payment of $6,400 by 11 a.m. on September 9 and the remaining $20,555 to be accounted for by a judgment note payable to the detective agency. It was further alleged that plaintiff went with Macur on the morning of September 9 to Cragin Federal Savings and Loan, Uptown Federal Savings and Loan and Golf Mill State Bank where Macur withdrew $4,700, $700 and $500 respectively and gave these sums to plaintiff for his retainer. Macur also wrote a check for $500 which plaintiff cashed. Macur was admitted to Reed Mental Health Center, where he was hospitalized for treatment of a nervous breakdown from September 10, 1975, to November 18, 1975. The Department alleged that Goranson received $6,400 for approximately one day's service and never forwarded any results of the surveillance to Macur. Lastly, it was alleged that the contract was cancelled on or about September 10, 1975, and that despite demands by plaintiff, no accounting or refund of any moneys was made. The Department charged that plaintiff's conduct failed to safeguard Macur's and the public's interest and constituted grounds for suspension or revocation of the certificates of registration as a private detective and as a detective agency under section 16(f) of "An Act to provide for licensing and regulating detectives * * *" (Ill. Rev. Stat. 1975, ch. 38, par. 201—16(f)).

At the hearing held on May 25, 1977, Macur testified that in response to his call, plaintiff arrived at his home sometime after midnight on September 9, 1975, to discuss putting his ex-wife, her husband, and their children and others under surveillance. Macur stated that at one point plaintiff was going to perform the surveillance work on a cost plus basis

and he gave him a check for $525.95; however, plaintiff changed his mind and decided to make the contract for a lump sum. Macur testified that his signature was on the service agreement contract which provided for payment of $6,400 as a retainer by 11 a.m. on September 9 and payment of the note for the balance of $20,555 by 1 p.m. September 10. Macur indicated that he had shown plaintiff his savings accounts and told him he had a 50% interest in the house, along with his sister.

Macur stated that plaintiff left his house around 7 a.m. September 9, indicating that he would return around 9 a.m. to take him to the bank. At Cragin Savings and Loan, Macur withdrew $4,700 of the $4,912.41 in his account, at Uptown Federal Savings and Loan, he withdrew $700 from an account containing $728.72, which he held as trustee for one of his children, and he withdrew $500 from another account there containing $504.52, which he also held as trustee for one of his children. Macur further testified that plaintiff drove him to Golf Mill State Bank, whereupon he wrote him a $500 check.

Macur went to plaintiff's office sometime that afternoon to sign the note for the balance due under the contract. The contract required him to pay the balance of $20,555 by 1 p.m. the next day and made the retainer of $6,400 non-refundable. Macur stated that his income at that time was about $350 per month for social security disability and his VA pension. Macur further stated that on the night of September 9, 1975, an employee of plaintiff's stayed all night, as did his Aunt Victoria Bowski, who had come over, and that his brother-in-law, Neil Long, remained part of the night. Lastly, Macur stated that he suffered a nervous breakdown on September 10 and was admitted to Reed Mental Health Center. He was later transferred to Downey Veterans Hospital where he remained until November 18, 1975.

Long testified that he arrived at Macur's house on the afternoon of September 9 after receiving a call from Macur's aunt. He called plaintiff's office in an attempt to get the contract cancelled and a three-way conversation ensued between himself, Macur's attorney, Paul Rozmarek, and plaintiff. Long stated that Macur indicated he would not agree to a cancellation and Rozmarek felt his hands were tied as a result. Long testified that he arranged for Macur to be committed to Reed Mental Health Center.

Plaintiff was called as an adverse witness. He stated that he and Macur discussed two contracts and that the $27,000 was figured on the time involved and the number of employees required. He further indicated that he was aware of the amount of moneys Macur held in the bank, his equity in the house and some patents pending with U.S. Gypsum. He could not recall whether Macur told him he was working but he thought that Macur said he was not. Plaintiff stated that he was aware

that the contract represented practically all of Macur's cash except some stocks and bonds. He testified that he told Macur to talk with his attorney, and that had the attorney said that Macur was incapable of signing a contract, he would have automatically cancelled it and refunded the $50 that Macur had already paid. He acknowledged that the attorney indicated that Macur did not need the services.

Plaintiff stated that no surveillance was undertaken, but he paid his employees who guarded Macur that night the sum of $546 and he also paid $2,050 to Anderson Security to have five men placed on standby. The contract was cancelled by his orders when the balance due was not paid on September 10 as per their agreement.

Plaintiff had one witness, Odell Anderson of Anderson Security, whose stipulated testimony indicated that he supplied $2,250 worth of services. Goranson offered as exhibits a letter from Rozmarek, his reply, a copy of Macur's resume, and a tape along with his transcript of it, recorded at Macur's house on September 9.

The detective examining committee issued its finding of fact and conclusions of law and recommended that plaintiff's licenses be revoked. Plaintiff filed a petition for a rehearing which was denied, and the Director adopted the findings and conclusions of the committee and ordered plaintiff's licenses revoked. Plaintiff then filed a petition for injunctive relief and administrative review in the circuit court, which affirmed the order of the Director.

OPINION

Plaintiff initially contends that the complaint did not meet the requirements of due process in that he was fairly and reasonably apprised of the acts of misconduct with which he was charged so that he could properly defend against such charges. We find this argument unpersuasive.

Our supreme court has held that in a proceeding involving revocation of a professional license, due process of law requires a definite charge, adequate notice, and a full, fair and impartial hearing. (*Kalman v. Walsh* (1934), 355 Ill. 341, 189 N.E. 315.) This does not mean that such charges need be drawn with "the refinements, niceties, and subleties of pleadings in courts of record." (*Kalman; Wells v. Health & Hospitals Governing Com.* (1977), 52 Ill. App. 3d 183, 367 N.E.2d 258.) "It is sufficient that the petitioner be fairly and reasonably apprised of the acts of misconduct with which he is charged so that he may properly prepare to defend such charges." *Tarr v. Hallihan* (1940), 375 Ill. 38, 42, 30 N.E.2d 421; *Rasky v. Department of Registration & Education* (1980), 87 Ill. App. 3d 580, 410 N.E.2d 69; *Strickland v. Department of Registration & Education* (1978), 60 Ill. App. 3d 1, 376 N.E.2d 255.

In the present case, the complaint detailed the circumstances which led to plaintiff's misconduct charge in violation of the statute. It informed him of the date and time of the alleged misconduct, particular actions on his part, specifically the trips to the three savings institutions, the terms and execution of the contract, and Macur's admittance to the Reed Mental Health Center the next day. There is no question that plaintiff was adequately apprised in the complaint of the circumstances surrounding the execution and cancellation of the contract during the time period in issue. Names of the witnesses and the written documents supporting the Department's charges were all referred to in the complaint. This is clearly not a situation where plaintiff did not have an opportunity to prepare his defense.

Plaintiff's argument that the final paragraph of the complaint, which states that such conduct constitutes grounds for revocation and suspension of his licenses, is inappropriate and unwarranted by the statute in question and must also fail. This paragraph apprises plaintiff of the consequences of these claims against him. As we held in *Hyon Waste Management Services, Inc. v. City of Chicago* (1977), 53 Ill. App. 3d 1013, 369 N.E.2d 1279, the test of whether one is given adequate notice is whether it apprises him of the claims to be defended against, and on the basis of the notice given, whether plaintiff could anticipate the possible effects of the proceeding. The Department filed its complaint against plaintiff in accordance with statutory provisions. It apprised him of the claims against him and the possible consequences. The detective examining committee was empowered to conduct a hearing based on those charges under section 17 (Ill. Rev. Stat. 1975, ch. 38, par. 201—17), and make its findings and recommendations available to the Director. We find that the complaint comports with the requirements of due process.

Plaintiff next asserts that he did not receive a fair and impartial hearing because of the conduct of Paul Shandling, the attorney for the Department, and because of the manner in which the chairman of the Illinois Detective Committee conducted the hearing. We disagree. Plaintiff primarily relied upon *Gigger v. Board of Fire & Police Commissioners* (1959), 23 Ill. App. 2d 433, 163 N.E.2d 541, in support of his contention that he was deprived of due process. In *Gigger*, the court found that plaintiff had been deprived of a fair trial primarily because the administrative agency attempted to prove his guilt rather than ascertain the true facts. The Board's attorney conducted the hearing, presented, interrogated and cross-examined the witnesses, ruled on all questions of law and evidence, and decided whether a continuance would be granted.

A hearing before an administrative agency should not be a partisan hearing with the agency on one side arrayed against the individual on the other. (*Lakeland Construction Co. v. Department of Revenue* (1978), 62

Ill. App. 3d 1036, 379 N.E.2d 859.) A fair hearing before an administrative body provides the party concerned with the opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute. (*Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369, 406 N.E.2d 863.) Thus, a fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses and impartiality in ruling upon the evidence. *Piotrowski*; *Lakeland*. We find no reason, after examining the record, to believe plaintiff was not provided such, unlike the situation in *Gigger*.

The witnesses called by the committee, Macur, Long, Bowski and plaintiff, were specifically referred to in the Department's complaint, and their testimony was necessary to help the Committee make its findings of fact in regards to the circumstances surrounding the contract in question. Had plaintiff felt other witnesses were also necessary to further the committee's enlightenment on the situation, there was presumably nothing preventing him from calling them. Plaintiff's allegation that Shandling asked leading and suggestive questions of the witnesses is also without merit. It appears such questions already had a foundation and plaintiff has taken them out of context.

There is a further allegation that Shandling asked numerous questions that could only be answered by hearsay evidence. Specifically, plaintiff alleges that Macur's conversation with Rozmarek in regards to the contract cancellation, Long's conversation's with Macur's aunt, the three-way conversation that ensued between Long, Rozmarek and plaintiff, Long's conversation with an employee of plaintiff and the question asked Long in regards to the surveillance report all constitute improper hearsay.

Generally, hearsay evidence is not admissible in an administrative proceeding. (*Baehr v. Health & Hospital Governing Com.* (1980), 86 Ill. App. 3d 43, 407 N.E.2d 817.) However, where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error. *La Grange Bank #1713 v. Du Page County Board* (1979), 79 Ill. App. 3d 474, 398 N.E.2d 992; *Russell v. License Appeal Com.* (1971), 133 Ill. App. 2d 594, 273 N.E.2d 650.

██ Excluding the hearsay testimony, the record still contains ample independent testimony and documents to support the agency's findings. Additionally, we point out that plaintiff had sufficient opportunity to cross-examine Macur, Bowski and Long and to testify himself in regards to these conversations. Long's conversation with plaintiff's employee does not appear to have any significant effect on the findings here. We, therefore, do not find that the hearsay testimony materially affected plaintiff's right to a fair and impartial hearing. See also Ill. Rev. Stat. 1977, ch. 110, par. 275(2).

■■ Plaintiff also charges that the chairman of the committee ceded his power to Shandling on ruling on two questions of evidence. There is no support for this in the record. In the first instance, plaintiff sought to admit the tape of his conversation with Macur into evidence. He asserts it was Shandling who decided on its admission. However, a review of the record indicates the chairman made this decision in accepting the tape for its probative value. The second instance involves Shandling stipulating to Anderson's testimony as to the cost of his services. This appears to be a mere courtesy for the convenience of plaintiff's witness. Further, the record refutes plaintiff's contention that the chairman conducted the hearing improperly. It was not error to refuse plaintiff's request to see the written summary of Macur's complaint. While Macur did indicate that he had a summary of the complaint with him at the hearing, he did not refer to its contents. Therefore, only the Department's complaint was in issue. Additionally, the chairman stated that if Macur referred to its contents, plaintiff could read it.

Testimony in regards to Macur's mental condition and the introduction of certain checks into evidence were probative of Macur's state of mind at the time in question and therefore properly admissible.

Finally, plaintiff argues that the findings do not reflect a careful evaluation of the evidence. The committee determined that plaintiff's acts surrounding the execution and cancellation of the contract with Macur demonstrated unworthiness and incompetence to act as a detective as defined under the act and made its recommendations to the Director, who adopted them.

We must give due deference to factual determinations of agencies for purposes of administrative review (*Village of Riverwoods v. Department of Transportation* (1979), 77 Ill. 2d 130, 395 N.E.2d 555; *Alexander v. Civil Service Com.* (1979), 75 Ill. App. 3d 507, 394 N.E.2d 516), as such findings and conclusions are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) On administrative review, our function is to determine whether the agency's findings are supported by substantial evidence. (*Battle v. Illinois Civil Service Com.* (1979), 78 Ill. App. 3d 828, 396 N.E.2d 1321.) If there is substantial evidence to support an agency's decision, the decision must be affirmed. *Talman v. Department of Registration and Education* (1979), 78 Ill. App. 3d 450, 397 N.E.2d 151.

■■ We conclude that the findings of fact are supported by the evidence. The record discloses overwhelming evidence that plaintiff knew the retainer represented most of Macur's assets. In fact, his own testimony indicated that he knew the retainer represented just about all of Macur's cash, except some stocks and bonds, thus raising doubts about Macur's ability to meet his obligation under the contract, namely, payment of $20,555 by 1 p.m. the next day. The record is also replete with evidence of

Macur's mental condition. Plaintiff himself introduced into evidence a tape of his conversation with Macur the night of September 9, 1975, in which he and Macur discussed his mental state. This was indicative of plaintiff's doubts about Macur's capacity to contract. When Macur was not able to pay the remainder of the money due on the contract the next day, plaintiff cancelled it and retained the $6,400, admitting that no surveillance was undertaken. In order to conclude that the administrative agency's findings are against the manifest weight of the evidence, we must be satisfied that an opposite conclusion is clearly evident. (*Battle v. Illinois Civil Service Com.* (1979), 78 Ill. App. 3d 828, 396 N.E.2d 1321.) We are not convinced that a conclusion opposite the findings of the Department is clearly evident; thus, we must concur with the agency's determinations.

For the foregoing reasons, the order of the circuit court upholding the Department's decision is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.